385 So.2d 866 (1980)
DAIGRE ENGINEERS, INC., Plaintiff-Appellee,
v.
CITY OF WINNFIELD, Louisiana, Defendant-Appellant.
No. 14154.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
*867 Crowell, Owens & Tudor by William B. Owens, Alexandria, for plaintiff-appellee.
Sanders & Castete, Ltd., by Martin S. Sanders, Jr., Winnfield, for defendant-appellant.
Before HALL, MARVIN and JONES, JJ.
JONES, Judge.
Defendant, The City of Winnfield, (City), appeals a judgment granting a preliminary injunction in favor of plaintiff, Daigre Engineers, Inc. (Daigre). The injunction prohibited the City from cancelling its contract with Daigre and granting the contract to Daigre's competitor. We affirm.
Plaintiff and defendant contracted in June of 1975 for plaintiff to provide engineering services for a sewerage extension and improvement plan for the City. Daigre's services were divided into several phases(1) application, (2) preliminary design (Step 1), (3) final construction drawings, specifications, and contract documents (Step 2), and (4) construction (Step 3). The application phase and Step 1 (preliminary design phase) had been completed when Daigre received notice of a City Council meeting to be held on October 3, 1979, for the purpose of termination of the contract. At this meeting the City Council ended the contract despite Daigre's contention that the contract could only be terminated in accordance with the arbitration provisions therein contained.
The plaintiff had prepared the necessary applications to secure approval of the Environmental Protection Agency (EPA) to proceed with Step 2 of the contract at the time the City commenced proceedings to cancel the contract. The original contract provides in Section III the following:
"This Agreement shall remain in force for a period which may reasonably be required for the design, award of contracts and construction of the Project, including extra work and any required extensions thereto, or for a period of twelve (12) months after the completions of the services called for either in Section IIA (Application Phase) or IIB (Preliminary Design Phase), whichever may be pertinent, in case construction is not commenced. The final acceptance by the Owner of each construction contract in the Project shall serve as evidence of completion, on the part of the Engineer, of all services under this contract, insofar as they pertain to that section of the Project."
Addendum # 4 to the original contract, which was executed in 1978, was designed to supplement the provisions of Step I of the original contract for the purpose of obtaining additional EPA funds to perform a Sewer Evaluation Study. This Addendum had also as a purpose the modification of the original contract by adding to it new regulations of the EPA which had become effective Feb. 1, 1977 and which was styled "Required Provisions Consulting Engineers' Agreement" and designated Appendix C-1. Addendum # 4 outlined plaintiff's duties in connection with the Sewer Evaluation Survey and its compensation. It contained in Section III thereof the following, to-wit:
"SECTION IIIPERIOD OF SERVICE
This agreement shall remain in effect until the completion of the Sewer Evaluation Survey."
Defendant contends that the quoted language from Addendum # 4 entitled it to terminate the contract at the completion by plaintiff of Step I. Plaintiff contends the language quoted above from Section III of the original contract governs the life of the contract and the contract will remain in effect until after the construction has been completed.
The basis of plaintiff's suit for arbitration is contained in Section VIII[1] of the original *868 contract which provides that all disputes between the plaintiff and defendant shall be resolved by arbitration. Plaintiff contends arbitration was required to resolve the dispute with regard to whether or not the contract could be terminated by the City at the completion of Step I. Plaintiff further relies upon the provisions relating to termination and arbitration contained in Section IV[2] and V[3] of Addendum # 4. Section IV of the addendum specifically provides:
"In the event the Owner elects to terminate this Agreement and the Engineer opposes such termination, then this shall be considered a dispute and such dispute shall be submitted to arbitration in accordance with the Section of this Agreement entitled `Arbitration of Dispute'."
We observe that Appendix C-1 attached to Addendum # 4 contains the following provisions:
"6. REMEDIES
Except as may be otherwise provided in this agreement, all claims, counter-claims, disputes and other matters in question between the Owner and the Engineer arising out of or relating to this agreement or the breach thereof will be decided by arbitration if the parties hereto *869 mutually agree, or in a court of competent jurisdiction within the State in which the Owner is located."
Because the City refused to arbitrate and proceeded to cancel its contract, Daigre filed this action to enforce the arbitration provisions of the contract and to enjoin the City from terminating the contract with Daigre and from entering into a contract with any other engineer "pending arbitration of said termination". Included among the allegations of Daigre's petition as reasons why it is entitled to the injunction judgment we find the following:
"In order to protect Petitioner's rights and interests in its contractual relationship with `Winnfield', it is necessary that this Court permanently restrain and enjoin the Defendant, `Winnfield', its agents, employees and all other persons, firms or corporations acting or claiming to act in its behalf from severing its contractual relationship with `Daigre' and awarding the balance of the work to be performed under the above referenced contract to any other engineering firm."
After a hearing the trial judge issued a preliminary injunction prohibiting the City from terminating the contract with Daigre and from awarding a contract for the balance of the work to any other engineering firm. The judgment made no affirmative declaration on the issue of arbitration. The trial judge required a $100,000 surety bond as a condition to the issuance of the injunction which plaintiff supplied with an out-of-parish surety. The City appeals, contending error in the granting of the preliminary injunction.
Appellant assigns as error (1) the trial court's adjudication that plaintiff was entitled to arbitrate the issue of termination of the contract, (2) the trial court's granting the preliminary injunction when plaintiff had not established irreparable harm and had not shown it would be successful on the merits of the case, and (3) the trial court's refusal to dissolve the preliminary injunction for the reason that the surety provided on the bond was an out-of-parish resident who had not been approved as required by LSAC.C. art. 3042.
LSA-C.C.P. art. 3601[4] provides that an injunction shall issue where irreparable injury, loss or damages would otherwise result to the applicant. Irreparable injury is considered to be a loss sustained by an injured party which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard. National Pacific Corp. v. American Com. Fin. Corp., 348 So.2d 735 (La.App. 1st Cir. 1977); Pennington v. Drews, 209 La. 1, 24 So.2d 156 (1945); City of Lake Charles v. Lake Charles Ry., L. & W. Co., 144 La. 217, 80 So. 260 (1918). The jurisprudence construing LSA-C.C.P. art. 3601 and 3609[5] requires the applicant for the injunction to make a prima facie showing that it will prevail on the merits of the case. General Motors Acceptance Corp. v. Daniels, 377 So.2d 346 (La.1979); Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930); Price v. State, Dept. of Pub. Saf., Lic. Con. & D.I. Div., 325 So.2d 759 (La.App. 1st Cir. 1976); Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1st Cir. 1970).
The Louisiana Arbitration Law is contained in LSA-R.S. 9:4201 et seq. The enforceability of an agreement to arbitrate is set forth in Section 9:4201:
"A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing *870 between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
LSA-R.S. 9:4203[6] provides that a party aggrieved by the failure or refusal of another to arbitrate under a written agreement for arbitration may petition the court for an order directing arbitration.
The case of Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La. 1974), recognized that the provisions of LSA-R.S. 9:4203 of the Louisiana Arbitration Law:
"... requires a court to order arbitration, once it finds that there has been an agreement to arbitrate and a failure to comply therewith." Bartley, supra, at 283.
The favor to which agreements to arbitrate are entitled under the law is reflected by the following quote from the decision of Cajun Electric Pow. Coop., Inc. v. Louisiana P. & L. Co., 324 So.2d 475 (La.App. 4th Cir. 1975), at pp. 478-479:
"The law favors an interpretive effort toward upholding arbitration. The purpose of the Louisiana Arbitration Law, LSA-R.S. 9:4201 et seq., had been discussed as follows:
`* * * The act may prove useful in making certain that contracts providing for arbitration are carried out and may deter those who, having provided for arbitration, would later prefer to evade this provision and burden the court with matters which might better be settled through arbitration with time and trouble saved for all parties concerned.'
And this court has recently observed that:
`The parties have entered into an enforceable agreement which provides for arbitration, and between them it is binding as the law. The court will not permit the evasion of this provision.' Wright v. Round the Corner Restaurants, 252 So.2d 341 (La.App. 4th Cir. 1971).
Where there is doubt, the general rule is that it should be resolved in favor of, not against, arbitration. See: Southern Bell Tel. & Tel. Co. v. Louisiana Power & Light Co., 221 F.Supp. 364 (E.D.La.1963); Texas Gas Transmission Corp. v. International Chemical Workers Local Union No. 187, AFL-CIO, 200 F.Supp. 521 (W.D.La. 1962)."
The provisions of LSA-R.S. 9:4202 provide for a "stay of proceedings brought in violation of arbitration agreement" and further establish the extreme importance recognized by our law of enforcing arbitration agreements. This section reads as follows:
"If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration."
In the decision of Bodman, Murrell & Webb v. Acacia Found. of L.S.U., 246 So.2d 323 (La.App. 1st Cir. 1971), the arbitration *871 provisions of a contract were enforced to compel arbitration wherein there was a contention made that the arbitration agreement was unenforceable because there was a total breach of the contract. In this case an architect sought arbitration under the arbitration provisions in his contract with the owner to resolve a dispute as to the owner's right to terminate his contract because the architect was alleged to have "failed to meet earlier the time schedule or budget limitations imposed by the contract."
In the companion case of Acacia Foundation of L.S.U., Inc. v. Bodman, Murrell & Webb, 246 So.2d 327 (La.App. 1st Cir. 1971), the court stayed the proceedings in a suit wherein the owner had sued the architect for damages for breach of the contract. The court was here applying the provisions of LSA-R.S. 9:4202.
Appellant's contention that the trial judge erred because he made an affirmative finding that plaintiff was entitled to arbitrate is without merit because the judgment does not so state. The trial judge in his reasons for judgment which were not fully articulated, made the following statement:
"... Gentlemen, this is a matter before the Court today on a Motion for a Preliminary Injunction. Of course, this is a serious remedy. The Court really appreciates the seriousness of it. Just as serious as this motion ... it is a serious matter, involving both the City of Winnfield and Mr. Daigre. It is something that should be aired in our Courts and everybody be able to present their proper evidence in a Court of law. And I am going to grant the Preliminary Injunction. Judge Wright will be back here on ... on the 7th of January and I am sure he will give you an early trial date. And that is the judgment of the Court, the Preliminary Injunction shall be granted."
The law requires that plaintiff must establish a prima facie case on the merits of his claim in order to be entitled to the preliminary injunction, but it does not require conclusive adjudication of plaintiff's claim on the merits as a condition for the preliminary injunction. The trial judge has broad discretion in determining whether to grant or refuse the injunction.
In the case of Melancon v. Assumption Par. Police Jury, supra, the court stated at p. 691:
"A preliminary injunction is interlocutory in nature, designed to preserve the status quo until a determination can be made on the merits of the controversy. It may issue on a prima facie showing by the plaintiff that he is entitled to the relief sought, and that he would suffer irreparable injury if it is not granted. Ridge Park v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128 (1946); Cloud v. Dyess, 172 So.2d 528 (La.App. 3 Cir. 1965).
* * * * * *
The trial judge has broad discretion in determining whether to grant or refuse a preliminary injunction. Silberman v. Beaubouef, 175 So.2d 873 (La.App. 3d Cir. 1965)."
The provisions quoted from the contract earlier in this opinion, together with the pleadings and the evidence taken at the hearing, adequately establish a prima facie case on plaintiff's contentions as to the duration of the contract, the existence of a binding agreement to arbitrate, and the refusal of the appellant to participate in arbitration proceedings. We conclude that the trial judge found plaintiff established a prima facie case, although he failed to so state. If he had not so concluded, he would not have issued the preliminary injunction. The trial judge pointed out that he was maintaining the status quo until there could be a full hearing held for the purpose of determining whether or not plaintiff was entitled to arbitrate the dispute.
Appellant contends plaintiff failed to show irreparable harm because he showed no damages which could not be compensated in money, and for this reason he was not entitled to the injunction. We note that plaintiff's petition contains no demand *872 whatsoever for a money judgment and the only relief therein sought is to compel arbitration which plaintiff was entitled to seek under the provisions of LSA-R.S. 9:4203.
The extreme value of the right to arbitrate has been recognized by the legislature through the provisions of the Louisiana Arbitration Law. The right has been recognized as so valuable that a party denied it is entitled to stay any judicial proceedings brought upon an issue which he is entitled to arbitrate "until an arbitration has been had in accordance with the terms of the agreement." The effect of a stay of proceedings granted under the provisions of LSA-R.S. 9:4202 is to maintain the status quo until arbitration has been completed. If appellant had sued to terminate the contract rather than unilaterally cancelling same by the action of the City Council, Daigre would have been entitled to seek a stay of the proceedings in that suit maintaining the status quo until arbitration had been completed. Daigre here seeks to maintain the status quo by the injunction process while it arbitrates the dispute. If appellant is permitted to evade the arbitration law by proceeding through the action of its City Council to cancel plaintiff's contract and employ a new engineer without first arbitrating the dispute, plaintiff will sustain the loss of his valuable right to arbitrate. Our conclusion is that the loss of this right is one which can not be compensated in money and for that reason the loss of the right to arbitrate could constitute irreparable harm.
In the case of Town of Kinder v. Beauregard Elec. Co-Op., Inc., 339 So.2d 891 (La. App. 3d Cir. 1976), and other cases cited therein, the right of an electrical franchisee to be protected in the exercise of its franchise was recognized as entitled to the protection of an injunction. In the case of Haughton Elevator Division v. State, etc., 367 So.2d 1161 (La.1979), the right of a low bidder on a public contract to prevent the award of the contract to a higher bidder in violation of the public bid laws was recognized as entitled to protection by an injunction.
We conclude the rights protected in these cases by the injunctive process are comparable to plaintiff's right to the protection of the arbitration provisions contained in his contract under the Louisiana Arbitration Laws. The preliminary injunction here granted was necessary to maintain the status quo and prevent irreparable harm to plaintiff in the event it was established on a trial of the merits that plaintiff was entitled under the law to arbitrate his dispute with appellant.
The surety provided on the $100,000 injunction bond was a resident of Rapides Parish rather that Winn Parish where the suit was brought. The provision of LSA-C.C. art. 3042 provides:
"... where surety is tendered of persons residing out of the parish, the judge alone shall pass on the sufficiency thereof, and shall require such proof as he may deem necessary."
The trial judge did not "pass on the sufficiency thereof" at the time the bond was supplied and the injunction became effective, but he specifically approved the non-resident surety at the hearing on the motion filed by appellant to dissolve the injunction because of the non-resident surety on the bond. We find the trial judge's approval of the surety at this time substantially complied with the Code Article and for this reason appellant's argument of error based on the non-resident surety is without merit.
For the reasons assigned the judgment is AFFIRMED.
NOTES
[1] SECTION VIIIARBITRATION OF DISPUTESShould any dispute arise hereunder between the Owner and the Engineers as to any of the terms or provisions of this Agreement or the obligation of the parties thereunder, the Owner and the Engineer shall submit such dispute to arbitration as follows:

A. the Owner and the Engineer shall each appoint an arbitrator, who together shall select a third arbitrator.
B. Arbitrators shall have full power to investigate such dispute, hear witnesses, examine papers, drawings and documents, and take professional expert opinion thereon and shall arbitrate and decide such dispute to carry out the intentions of the parties and do justice between them. Their decision shall be a condition precedent to any court action.
C. In the event arbitrators are unable to agree upon the selection of the third arbitrator, or having selected such arbitrator, the three arbitrators are unable to reach an agreement, then the arbitration shall be considered to have been exhausted.
[2] SECTION IVTERMINATIONThis agreement may be terminated by the Owner in the event the Engineer is not performing the services that are required of him under the provisions of this Agreement, or in the event both the Owner and the Engineer mutually agree to terminate this Agreement. In the event the Owner elects to terminate this Agreement and the Engineer opposes such termination, then this shall be considered a `dispute' and such dispute shall be submitted to arbitration in accordance with Section of this Agreement entitled `ARBITRATION OF DISPUTES'. If this contract is terminated by the mutual agreement of the Owner and the Engineer, or if this Agreement is terminated as a result of an arbitration decision hereunder, or if this contract is terminated as the result of the decision of a court, then as soon as practical thereafter, the Engineer shall submit a statement showing in detail the services performed under this Agreement to the date of termination. The Owner shall then pay the Engineer promptly that proportion of the described fee which the reasonable value (quantum) of the services actually performed under this Agreement bares to the reasonable value of the total services called for under this Agreement, less such payments on account of the fee as have been previously made; in addition thereto, the Owner shall also be obligated to pay the Engineer for the anticipated profits which the Engineer would have been entitled to had this contract not been terminated, based upon the proportion of the services actually performed to the total services called for under this Agreement. Copies of all completed or partially completed designs, plans, and specifications prepared under this Agreement shall be delivered to the Owner when and if this Agreement is terminated but subject to the restrictions as to their use, as set forth above.
[3] SECTION VARBITRATION OF DISPUTES Should any dispute arise hereunder between the Owner and the Engineer as to any of the terms or provisions of this Agreement or the obligations of the parties thereunder, the Owner and Engineer shall submit such dispute to arbitration as follows:

A. The arbitrator(s) shall be selected and chosen in accordance with the rules and regulations of the American Arbitration Association, reserving to the Owner and Engineer the right to determine whether one or three arbitrators shall be selected and chosen.
B. The arbitrators shall have full power to investigate such dispute, hear witnesses, examine papers, drawings, and documents, and take professional, expert opinion thereon, and shall arbitrate and decide such disputes to carry out the intentions of the parties, and do justice between them. Their decision shall be a condition precedent to any court action.
C. In the event the arbitrators are unable to reach an agreement, then the arbitration shall be considered to have been exhausted.
D. The arbitration under this paragraph shall be conducted in accordance with the rules, regulations and practices established by the American Arbitration Association.
[4] LSA-C.C.P. art. 3601An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, * * * During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
[5] LSA-C.C.P. art. 3609The court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases. * * *
[6] LSA-R.S. 9:4203The party aggrieved by the alleged failure or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties, or of the property, for an order directing that the arbitration proceed in the manner provided for in the agreement. Five days' written notice of the application shall be served upon the party in default. Service shall be made in the manner provided by law for the service of a summons.

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall issue an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure or refusal to perform is an issue, the court shall proceed summarily to the trial thereof. * * *.