398 So.2d 643 (1981)
W. C. LAMB d/b/a Lamb Enterprises, Plaintiff-Appellant,
v.
QUALITY INSPECTION SERVICES, INC., Mark Carte and Leonard Scrantz, Defendants-Appellees.
No. 8097.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1981.
*644 Bean & Rush, Warren D. Rush, Lafayette, and Arnold, White & Durkee, James J. Elacqua, Houston, Tex., for plaintiff-appellant.
Fruge & DeJean, Jack C. Fruge, Jr., Lafayette, for defendant-appellee.
Before CULPEPPER, FORET and STOKER, JJ.
FORET, Judge.
Lamb Enterprises (Plaintiff) appeals from a denial by the trial court of its prayer for the issuance of a preliminary injunction against defendants, Quality Inspection Services, Inc., Mark Carte, and Leonard Scrantz.
The issue is whether the trial court abused its broad discretion in refusing to issue the preliminary injunction.

FACTS
Plaintiff is a sole proprietorship, formed under the laws of this State, with its principal place of business in Lafayette, Louisiana. It is primarily engaged in the inspection of pipe and other tubular products for industry. The purpose of its inspection is to detect flaws and defects in equipment before failure during actual use occurs. There are a number of different methods used to inspect tubular products, i.e., dry and wet magnetic particles, visual inspection, optical inspection, fluoroscopic inspection, ultrasonic testing, dye penetrant, etc.
Mark Carte and Leonard Scrantz are former employees of plaintiff who terminated *645 their employment in March, 1980, and formed a company known as Quality Inspection Services, Inc. (Quality) shortly thereafter. Quality specializes in inspecting tools and pipe which are used in making up what is termed the "bottom-hole assembly".[1] The primary method used by Quality in performing these inspections is ultrasonic testing.[2]
Plaintiff instituted this action on May 20, 1980, alleging that defendants were using certain of its "trade secrets," learned during the course of their employment with it, in performing their inspections. It further alleged that it would suffer "irreparable injury" unless defendants were enjoined from doing so. The trial court, after hearing, refused to issue a preliminary injunction, and plaintiff was granted a devolutive appeal.

"TRADE SECRETS"
The U.S. Supreme Court, in Kewanee Oil Company v. Bicron Corporation, et al, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974) held that the states were not preempted by the patent law of the United States from providing protection for "trade secrets" which may or may not be patentable. Louisiana does (in a very vague and general manner) provide protection for "trade secrets" by making it unlawful to engage in "unfair" trade practices under the provisions of LSA-R.S. 51:1405[3].
What constitutes unfair competition is a matter to be decided in each individual case and involves a balancing between the right of the employee to individual freedom on the one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand. National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269 (La.App. 4 Cir. 1980).
The courts, in addition, have always stood ready to grant injunctive relief to protect valuable "trade secrets" property. Marcann Outdoor, Inc. v. Johnston, 229 So.2d 419 (La.App. 3 Cir. 1969).
Various efforts have been made to define what is a "trade secret". The tests applied include: (1) is the information a secret not generally known to the trade; (2) although absolute secrecy is not essential, has it been kept at least a qualified secret; and (3) is it of value. Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254 (E.D. La. 1967).
The Restatement of Torts, § 757, Comment B (1939) sets forth the following definition of a "trade secret":
"A trade secret may consist of any formula, pattern, device or compilation of information which is used in ones business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."
"Trade secrets and confidential information, in order to be protected against disclosure by employees, must be the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged. Their character is not material, as long as they are peculiar and important to the employer's business and are used exclusively by him...."
56 C.J.S. Master and Servant § 72(b), page 484.
Plaintiff claims that it developed certain techniques and procedures for conducting an ultrasonic inspection of tubular goods, including those used in making up a "bottom hole assembly", after expending large *646 sums for research and development. It further claims that it has gained a competitive edge through the use of this information, which it has sought to keep confidential and, therefore, this information constitutes a "trade secret". Plaintiff contends that defendants are now using this information to perform their inspection services and that it is entitled to a preliminary injunction enjoining defendants from misappropriating these valuable "trade secrets".
Plaintiff relies on National Oil Service of Louisiana, Inc. v. Brown, supra, arguing that the court there reversed a judgment of a trial court which had refused to issue a preliminary injunction sought by the plaintiff and recognized the need to protect the holder of a trade secret from disloyal employees.
The court, in National, found that the use of plaintiff's confidential and privileged trade information and trade secrets constituted an invasion of plaintiff's property rights and unfair competition and unfair trade practices on the part of defendant. The "trade secrets" in National consisted of lists of customers whose regular patronage had been acquired through the plaintiff's-employer's advertising, solicitation and organized effort. Further, these lists had been developed through contacts and organized efforts of all of plaintiff's employees. The lists were also compiled for the additional purpose of providing plaintiff's truck drivers with a routine route for the purpose of efficient and systematic collection of waste oil[4], besides simply providing a record of the names of customers.
Plaintiff, in the case before us, equates its development and compilation of information regarding the ultrasonic testing of component parts of a "bottom hole assembly" with the customer list involved in National and argues that defendants' use of this information constitutes an invasion of its property rights.
Defendants, on the other hand, argue that the techniques and procedures used by plaintiff were in fact matters of public knowledge which had been developed by others long before plaintiff applied them in certain specific inspection situations and that such information failed to constitute a "trade secret".
The moving party, to obtain a preliminary injunction under LSA-C.C.P. Article 3601[5], must show that the injury, loss or damage he will suffer may be irreparable if the court fails to issue the injunction. The party must also show that it is entitled to the relief sought and must make a prima facie showing that it will prevail on the merits of the case. General Motors Acceptance Corporation v. Daniels, 377 So.2d 346 (La. 1979); Price v. State, Department of Public Safety, License Control and Driver Improvement Division, 325 So.2d 759 (La. App. 1 Cir. 1976); Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1 Cir. 1970).
The evidence indicates that there are many other companies which use the ultrasonic method of inspecting tubular products and that some also use this method for inspecting the component parts of the "bottom hole assembly". Plaintiff argues, though, that it is the only one that uses its certain techniques and procedures to do so. However, the evidence provides no support for plaintiff's argument and, in fact, indicates that plaintiff simply refined techniques and procedures generally known by those familiar with the ultrasonic inspection method.
There was evidence of the fact that defendants used a different ultrasonic device *647 from that used by plaintiff in making their inspections. Defendant, Mark Carte, had attended the Spartan School of Aeronautics where he gained considerable knowledge with respect to a number of non-destructive testing methods, including ultrasonic testing. He was then employed by plaintiff and given a short orientation course to familiarize him with the type of work done by plaintiff. Carte then began to teach inspection techniques to other employees of plaintiff.
Steven Clark was called as a witness by defendants and was accepted by the court as an expert in the field of quality control with particular expertise in the field of ultrasonic testing. He testified that he knew of twelve to fifteen companies in the Houston area alone which were performing ultrasonic inspections of down hole tools. He reviewed a manual published by plaintiff for use by its employees in conducting their inspections and testified that it contained no information with respect to ultrasonic inspections which he had been unaware of prior to his review. He further testified that he had witnessed ultrasonic inspections by other companies and that their methods of conducting those inspections were similar to or identical with those used by plaintiff.
We find that plaintiff has failed to make a prima facie showing of the existence of its alleged "trade secrets" and the use of such by defendants.
Finally, plaintiff cites Brown & Root, Inc. v. LaBauve, 219 F.Supp. 179 (W.D. La. 1962) and argues that the court there found that the defendant-employee had a fiduciary obligation to his plaintiff-employer and was unable to capitalize on information and knowledge gained while employed by plaintiff even though that information could be obtained from public sources.
Defendant, in Brown & Root, Inc., was employed by plaintiff for approximately three months during which time defendant, through information given him as an employee, learned of the route of a proposed pipeline to be constructed by his employer. Defendant, upon learning this information, terminated his employment with plaintiff and attempted to acquire property along the proposed pipeline route for the purpose of benefiting from the acquisition of right-of-ways by his former employer. The court, in Brown & Root, Inc., refused to allow defendant to capitalize on this information, finding that it would be a breach of defendant's fiduciary obligation to his former employer to allow him to do so.
We find that Brown & Root, Inc. v. LaBauve, supra, is inapposite to the case before us, as plaintiff has failed to prove the existence of any confidential information or knowledge imparted to defendants by virtue of the employment relationship and which they now seek to use for their own benefit.

NON-DISCLOSURE AGREEMENT
Plaintiff also contends that defendants, Mark Carte and Leonard Scrantz, have violated the terms of a "confidential non-disclosure agreement"[6] which they entered *648 into with plaintiff as consideration for their employment by it and that these defendants should be enjoined from any further violation of their agreements.
The agreement itself stipulates that what is to be kept secret is all "non-public" processes, equipment, inventions, formulas, business secrets, or special methods learned while employed by plaintiff. Here, the defendants are simply using knowledge which is generally known by others performing the same type of services as defendants.
What is entitled to protection is knowledge confidentially gained, but an employer cannot prevent his employee from using the skill or intelligence acquired through experience received in the course of the employment. The employee may achieve superiority by every lawful means and upon the rightful termination of his contract use that superiority for the benefit of rivals in the business of his former employer. Standard Brands, Inc. v. Zumpe, supra; 56 C.J.S. Master and Servant § 72(a), page 484.
The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court, although that discretion is reviewable if erroneously exercised. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La. 1979); Schweqmann Brothers Giant Supermarkets v. Louisiana Milk Commission, 290 So.2d 312 (La. 1974); Silberman v. Beaubouef, 175 So.2d 873 (La.App. 3 Cir. 1965); Daigre Engineers, Inc. v. City of Winnfield, 385 So.2d 866 (La.App. 2 Cir. 1980).
We see no error by the trial court in refusing to issue the preliminary injunction prayed for by plaintiff.
Defendant has answered the appeal, contending that the said appeal is frivolous, and seeks damages. We see no merit in the answer to the appeal.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The "bottom-hole assembly" refers to the collection of drill collars, stabilizers, flex-weight, bit, etc., located at the end of the drill stem of a rig used in drilling for oil.
[2] Ultrasonic testing of tubular products is accomplished by beaming sound waves through the piece to be tested and by using certain equipment to detect any echos which may be caused by flaws or defects therein.
[3] LSA-R.S. 51:1405 provides in pertinent part:

"§ 1405. Unlawful acts or practices; Interpretation and rule making authority
A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
[4] Plaintiff was primarily engaged in the business of collecting and recycling waste oil for further use. Thus, its customer lists were used to set up a schedule for the periodic collection of waste oil from each customer by plaintiff's employees.
[5] LSA-C.C.P. Article 3601 provides in pertinent part:

"Art. 3601. Injunction, grounds for issuance; preliminary injunction; temporary restraining order
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law."
[6] ENTERPRISES AND/OR W. C. LAMB
CONFIDENTIAL NON-DISCLOSURE AGREEMENT
As a consideration for my initial or continued employment, I agree to keep secret all non-public processes, equipment, inventions, formulas, business secrets or special methods learned by me while in the employ of the Company, whether owned, developed or used by the Company under license from others, and further agree not to disclose or make known any of the same, directly or indirectly, or anything relating thereto to any person, firm or corporation without the written authorization of Lamb Enterprises and/or W.C. Lamb. ____________________________________ _________________________________________
 Date Signature of Employee