431 So.2d 1084 (1983)
EQUITABLE PETROLEUM CORPORATION, Plaintiff-Appellant-Appellee,
v.
CENTRAL TRANSMISSION, INC., Defendant-Appellant-Appellee.
No. 15267-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1983.
*1085 Schudmak & Cusimano by P. Keith Daigle, Metairie, for plaintiff-appellant-appellee.
Beard & Sutherland by Fred H. Sutherland, Shreveport, for defendant-appellant-appellee.
Before HALL, JASPER E. JONES, FRED W. JONES, SEXTON and NORRIS, JJ.
FRED W. JONES, Judge.
This appeal focuses on the correctness of a trial court judgment signed on August 2, 1982, ordering the issuance of a preliminary injunction to remain in effect for two months from July 21, 1982.
In 1974 Equitable Petroleum Corporation ("Equitable") and Central Transmission, Inc. ("CTI") executed a number of "Gas Sale and Purchase" agreements under *1086 which Equitable agreed to sell and CTI to buy gas produced from some 40 shallow natural gas wells located in the Monroe Field. That gas was to flow through transmission lines owned by CTI to the latter's industrial customers. The contracts were to expire in 1977.
In 1977 new contracts (referred to hereinafter collectively as "the contract"), containing essentially the same provisions as the previous contracts, were executed. At that time CTI's precarious financial condition made bankruptcy a real possibility. Aware of this, and fearing the damage that would issue from an abrupt termination of its access to a gas gathering system, Equitable required that the 1977 contract contain the following clause:
"3.3 On termination of this contract, Seller shall have the exclusive right to use all Buyer's facilities necessary for Seller to market its gas and Buyer agrees to do nothing to disturb or interfere with Seller's use thereof. During such use, Buyer agrees to inspect, maintain, operate and repair such facilities and Buyer shall be compensated for the use, maintenance, inspection, operation and repair thereof at the rate of twenty cents (20¢) per each one thousand cubic feet of gas which Seller transports through Buyer's facilities, payment to be made to Buyer monthly by the end of the month following the month during which Seller's gas was transported. In the event Buyer in any way fails to inspect, maintain, operate and repair such facilities, Seller may do so and deduct the cost of doing same from the twenty cents (20¢) per MCF transportation fee herein provided."
The primary term of the 1977 contract was to terminate on December 31, 1981. Provision was made for a three year extension if the parties could agree upon a renegotiated gas price at least 90 days prior to expiration of the primary term. Despite their failure to agree on a new price structure for the gas, on December 24, 1981 the parties agreed "to extend the agreement on a month to month basis until either party notifies the other of its intention to discontinue the arrangement." It was further understood that CTI would continue dividing equally with Equitable any increase in price received from CTI's sale of gas to its industrial users.
By letter dated March 3, 1982 Equitable advised CTI that it planned to terminate all sales of gas to CTI on April 1, 1982 and would also invoke its right under Paragraph 3.3 of the 1977 contract to require CTI's transportation of Equitable's gas through the CTI transmission system at the rate of twenty cents per MCF.
On March 9, 1982 CTI informed Equitable of its position that par. 3.3 was invalid and unenforceable.
Equitable filed this suit on April 12, 1982 to permanently enjoin CTI from interfering with Equitable's use of CTI's natural gas transportation facilities and, in connection therewith, requested a temporary restraining order and a preliminary injunction. A temporary restraining order was issued conditioned upon Equitable's furnishing security in the sum of $2500in response to which Equitable deposited a cash bond which has apparently not been returned.[1]
A hearing on the rule for a preliminary injunction was held on July 2 and 8, 1982. In a written opinion filed on July 21, 1982 the trial judge ruled that: (1) Par. 3.3 of the 1977 contract was an agreement for an indefinite period which could be terminated at the will of either party upon the giving of reasonable notice and (2) since Equitable might lose production if its wells were "shut-in", the length of time required by it to secure alternative transport facilities would be the critical factor in determining what constituted "reasonable notice." The definite time Equitable would need to construct its own pipeline system was to be established at a later hearing (which was never held).
*1087 The trial court's judgment, signed on August 2, 1982, stipulates in pertinent part:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a preliminary writ of injunction issue herein enjoining and prohibiting Central Transmission, Inc. from terminating its obligation to receive and transport Equitable Petroleum Corporation's gas under the provisions of Paragraph 3.3 of the 1977 contract, for a reasonable period of time, said reasonable period of time to be definitely established at the next hearing to be conducted herein, which hearing may be scheduled by either party as soon as practical under the rules of this Court, in accordance with law and in accordance with the statements set forth in the written Opinion dated July 21, 1982. This preliminary injunction shall remain in effect for a period of two months from July 21, 1982 unless extended or shortened by further order of this Court."
The record contains no order extending the two month time limit for the preliminary injunction, which presumably expired as provided in the judgment.
CTI appealed, contending the trial judge erred in granting the preliminary injunction for any period of time because: (1) However classified, Par. 3.3 was invalid since it was a contract without a definite term and, alternatively, (2) CTI had given Equitable reasonable notice of its intent to terminate the contract.
Equitable answered the appeal, asserting that the trial judge committed error in failing to rule it was entitled to a preliminary injunction to remain in effect until there was a determination of Equitable's right to a permanent injunction.
As a general rule the petitioner in a suit for a permanent injunction must prove that irreparable injury, loss or damage may otherwise result. La.C.C.P. Art. 3601. Irreparable injury has been defined as a loss which cannot be adequately compensated in money damages or for which such damages are not susceptible of measurement by a pecuniary standard. Daigre Engineers, Inc. v. City of Winnfield, 385 So.2d 866 (La.App. 2d Cir.1980).
A preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial of the issues on the merits of the case. The applicant for a preliminary injunction has the burden of making a prima facie showing that he will prevail on the merits of the casei.e., that he will obtain a permanent injunction based upon proof of irreparable injury. GMAC v. Daniels, 377 So.2d 346 (La.1979); Daigre Engineers, Inc. v. City of Winnfield, supra.
Unless the parties expressly agree to submit the case for final decision at the hearing on the rule for a preliminary injunction, the principal demand for a permanent injunction is determined on its merits only after a full trial under ordinary process, even though the summary hearing on the rule for a preliminary injunction may tentatively decide merit-issues. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Haughton Elevator Div. v. State, 367 So.2d 1161 (La.1979).
In view of the foregoing, was it procedurally appropriate for the trial judge to grant a preliminary injunction to expire prior to the merit trial and ruling thereon? Put another way, did the trial judge err in rendering a judgment the practical effect of which was both to grant and to deny the request for a preliminary injunction? We answer the first question in the negative and the second in the affirmative.
When a preliminary injunction is requested incidental to a suit for a permanent injunction the trial judge has two alternatives. If the applicant has not made out a prima facie case for a permanent injunction, the demand for a preliminary injunction should be denied. If the applicant has made a prima facie for a permanent injunction, the preliminary injunction should be granted, maintaining the status quo until the merit-trial and decision thereon. To issue a preliminary injunction specified to expire prior to the trial on the merits is contradictory on its faceindicating by its granting the trial judge's determination *1088 that the applicant will probably prevail on the merits, but by its time limitation that the absence of irreparable injury at the time of the merit-trial will preclude a permanent injunction.
Having concluded that the trial judge erred in granting a 60 day preliminary injunction, we proceed to the next questiondid Equitable, at the hearing on the rule for a preliminary injunction, make out a prima facie case for a permanent injunction? We answer in the affirmative.
The validity of the contractual provision, its classification, and its term are the substantive merit issues to be determined after full trial under ordinary process. It was necessary for the trial court to examine and tentatively decide these issues in order to determine whether plaintiff was likely to succeed on the merits of its suit for a permanent injunction, that is, whether plaintiff made out a prima facie case of entitlement to a permanent injunction.
On the basis of the showing made at the preliminary hearing, it appears that the trial court, in its tentative merit-determination, was eminently correct in classifying paragraph 3.3 of the 1977 agreement as a contract for an indefinite period and, as such, terminable at the will of either party upon the giving of reasonable notice.
In Daily States Publishing Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930) the plaintiff sued to enjoin the breach of a contract purporting to give it the use of radio broadcasting facilities whenever plaintiff saw fit. The court found this contract to be sui generis, not falling clearly under any specific classification, and terminable upon the giving of reasonable notice since no specific period of duration was fixed.
A professional photographer sued a hospital for breach of an oral contract to permit photographing of newborn babies in the hospital nursery in Caston v. Woman's Hospital Foundation, Inc., 262 So.2d 62 (La. App. 1st Cir.1972). Defendant contended there was no valid contract because the agreement contained no term. The court pointed out that the stipulation of a term is not necessary to the existence of a valid contract. La.C.C. Art. 1779.[2] The court then proceeded to find that the contract in question was a valid one. However, since it was for an indefinite period, the agreement was deemed terminable upon the giving of reasonable notice. What constitutes reasonable notice must be determined in the light of the facts of the particular case. See also Baynard v. Guardian Life Ins. Co., 399 So.2d 1200 (La.App. 1st Cir.1981).
Equitable argues that implicit in paragraph 3.3 is a definite time periodas long as Equitable produces gas in marketable quantities from the Monroe Fieldand proceeds to analogize this contract to a mineral lease which remains in effect during production. We do not agree.
First, it is debatable whether this is a lease within the definition set forth in La. C.C. Art. 2674.[3] Second, even if categorized as a lease, we find no implication that it was for any "certain time."
In light of the cited jurisprudence, paragraph 3.3 is properly classified as a sui generis contract, without a definite term, terminable by either party upon giving reasonable notice.
Further, we agree with the trial judge that at the time of the hearing on the rule for a preliminary injunction CTI had not given Equitable reasonable notice of termination of the contract. The trial court appropriately reserved a decision on this factual question until a subsequent hearing which would normally have been the merit-trial.
*1089 As to a prima facie showing of entitlement to a permanent injunction because of irreparable injury, Equitable clearly discharged its burden of proof with evidence that, without access to CTI's gas transmission system and no reasonable opportunity to secure other outlets, a "shut-in" of its low pressure, shallow wells would probably result in the total loss of some of those wells.
To summarize, we find that, at the hearing on the rule for a preliminary injunction, Equitable made a prima facie showing of ultimate entitlement to a permanent injunction because:
(1) Paragraph 3.3 of the 1977 agreement constituted a valid contract under which Equitable could use CTI's gas transmission system for an indefinite period of time. But the contract was terminable by either party upon the giving of reasonable notice.
(2) At the time of the hearing on the rule for a preliminary injunction, CTI had not given Equitable reasonable notice of termination of the contract.
(3) In the absence of such reasonable notice (time required to secure alternative outlets), Equitable would suffer irreparable damage.
What constituted reasonable notice in this case must be ascertained by the trial judge at a hearing on the merits. Based upon that determination, the trial judge will either grant the permanent injunction for a stipulated period of time (for Equitable to arrange for other transmission facilities) or deny the permanent injunction (because of proof that reasonable notice had been given at the time of the merit-trial).
The issue before the trial court and this court was and is plaintiff's entitlement to a preliminary injunction pending trial on the merits, and the decision of the trial court and this court on the substantive merit issues is necessarily tentative, pending full trial on the merits. This opinion should not be construed to preclude further admissible evidence at the merit trial or as finally determining the merit issue.
Decree
For the reasons set forth, we reverse the district court judgment granting a preliminary injunction stipulated to expire 60 days after rendition of its opinion, and remand the case to the trial court with instructions to grant the preliminary injunction as prayed for, conditioned upon Equitable's furnishing proper security, and with the further instruction to fix the trial on the merits.
CTI is cast for costs of this appeal. All other costs are to be assessed after final determination of the matter.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent. In my view, the trial judge concluded that reasonable notice would expire two months after the hearing on the preliminary injunction, which finding is supported by the evidence. Plaintiff's right to question this finding and to obtain an extension of the preliminary injunction beyond two months was reserved. Plaintiff's contention, on appeal, is not addressed to the question of reasonable notice, but attacks the trial court's determination that the contract is terminable at all, a holding which the majority opinion says is correct.
I find nothing in the jurisprudence or Code of Civil Procedure which limits the trial judge to the two narrow alternatives set forth in the majority opinion.
The trial court may on its own motion modify preliminary injunctions after a hearing. LSA-C.C.P. Art. 3607. The trial court, in granting the preliminary injunction for a specified period of time, also ordered a hearing at the conclusion of that period to consider the possibility of continuing the preliminary injunction. I find this to be within the intent and spirit of LSA-C. C.P. Art. 3607. The majority also holds that a permanent injunction may be for a specific period of time but in overturning the action of the trial court holds that a preliminary injunction may not. I fail to *1090 see the distinction and therefore respectfully dissent.
NOTES
[1] CTI argues that the preliminary injunction issued in this case is invalid because no bond was ordered as required by La.C.C.P. Art. 3610. Equitable presumably understood that this cash bond would continue as security for the preliminary injunction. Be that as it may, our ruling appears to render this issue moot.
[2] Art. 1779. Four requisites are necessary to the validity of a contract:

1. Parties legally capable of contracting.
2. Their consent legally given.
3. A certain object, which forms the matter of agreement.
4. A lawful purpose.
[3] Art. 2674.

To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.