569 F.2d 895
 197 U.S.P.Q. 513
 T. G. I. FRIDAY'S, INC., Plaintiff-Appellant,
v.
INTERNATIONAL RESTAURANT GROUP, INC., Defendant-Appellee.
INTERNATIONAL RESTAURANT GROUP, INC., F. R. Trainor and
Benny E. Pittman, Plaintiffs-Appellees,
v.
T. G. I. FRIDAY'S, INC., Defendant-Appellant.
 No. 76-1633.
 United States Court of Appeals,
Fifth Circuit.
 March 17, 1978.
 
 1
 Wm. C. Kaufman, III, Baton Rouge, La., Wm. D. Harris, Jr., Charles S. Cotropia, Dallas, Tex., for plaintiff-appellant.
 
 
 2
 Gerald E. Songy, John V. Parker, Baton Rouge, La., M. Collins Bailey, Thomas W. Belleperche, Batesville, Miss., for defendant-appellee.
 
 
 3
 Appeals from the United States District Court for the Middle District of Louisiana.
 
 
 4
 Before COLEMAN and HILL, Circuit Judges, and SEAR,* District Judge.
 
 
 5
 SEAR, District Judge.
 
 
 6
 Appellant T.G.I. Friday's, Inc. (Friday's) was named as defendant in a suit brought by appellees International Restaurant Group, Inc. (International), F. R. Trainor and Benny E. Pittman in the Northern District of Mississippi which sought a declaratory judgment with supporting injunctive relief that appellees' opening of a restaurant in Baton Rouge did not violate the terms of a franchise agreement between appellant and Tiffany English Pub, Inc. (Tiffany), a corporation wholly owned by Trainor and Pittman. Thereafter the Mississippi defendant Friday's assumed a plaintiff's role and instituted suit in the Middle District of Louisiana seeking an injunction against the further operation of International's Baton Rouge restaurant and money damages for breach of contract, service mark infringement and unfair competition. The Mississippi case was transferred to the Middle District of Louisiana and consolidated with the case there. The district judge entered judgment in favor of the plaintiffs in the Mississippi case awarding the declaratory and injunctive relief sought, and in favor of the defendants in the Louisiana case rejecting appellant Friday's' claims. We affirm.
 
 I. Facts
 
 7
 The parties do not dispute the basic facts involved in this case. Friday's is a New York corporation formed in 1969 for the purpose of organizing and promoting restaurant franchises outside of New York City where the original TGI Friday's restaurant is located. The name "T.G.I. Friday's" was registered as a service mark with the United States patent office. Under licensing agreements with Friday's, various third parties have opened Friday's restaurants in Shreveport, Houston, Dallas, Memphis, Nashville, Atlanta, Little Rock, Jackson, Indianapolis, and Columbus. The motif of the restaurants is "turn of the century", an effect created through the placement of various period pieces such as Tiffany lamps, back-lit stained glass, beadboard paneling, tin ceilings, wooden floors, old pictures and outdoor awnings. Placemats, napkins, menus and matches displaying the names of all the days of the week are an additional decorative peculiarity characterizing Friday's restaurants.
 
 
 8
 On December 15, 1971 Friday's entered into a restaurant licensing agreement with Tiffany granting Tiffany an exclusive license to operate a Friday's restaurant in Jackson, Mississippi. The agreement was negotiated and signed on behalf of the corporation by appellees Pittman and Trainor, the sole shareholders and chief operating officers of Tiffany. The contract contained the following provision:"14. OTHER TRADENAMES AND MARKS
 
 
 9
 A. Licensee acknowledges (1) that Licensor has a vital interest in the names and marks, 'Tuesday's', 'Wednesday's', 'Thursday's', and 'Sunday's' (the 'other marks') and expects to develop interest in businesses operated under the other marks; (2) that Licensor's present use of the other marks has materially assisted in the creation of the national image and goodwill associated with 'T.G.I. Friday's' and (3) that no rights to the use of the marks is granted hereby.
 
 
 10
 B. Licensee covenants and warrants that during the term of this agreement and subsequent to its termination Licensee, its successors or assigns, shall not utilize the names of the days of the week singly or in combination with other words in connection with the operation of a business."
 
 
 11
 In connection with the opening of the Tiffany's Friday's restaurant in Jackson, Friday's furnished general assistance to Tiffany by providing an "opening team", recipes, an "operations Manual", and suppliers of items needed to furnish the restaurant in order to ensure that the restaurant conformed to the specifications of the licensing agreement.
 
 
 12
 In December of 1972 Pittman and Trainor discussed with Friday's the possibility of purchasing an additional franchise for the Baton Rouge area, but their request was turned down. Pittman and Trainor then formed International in February 1973 and in December of that year opened a restaurant in Baton Rouge which they called "Ever Lovin' Saturday's". Both International and Tiffany initially operated out of the same office space and had some of the same personnel. In fact, certain expenses incurred by International were mistakenly billed to Tiffany's Friday's in Jackson by restaurant suppliers who were furnishing items to International. However, the financial structures and assets of the two corporations have been kept scrupulously separate.
 
 
 13
 "Ever Lovin' Saturday's" in Baton Rouge is strikingly similar to a Friday's restaurant from its turn of the century motif to its menus. It is this similarity which is at the heart of the dispute presented on appeal.
 
 
 14
 II. Breach of contract.
 
 
 15
 Appellant contends that appellees' use of the word "Saturday's" in the name of the Baton Rouge restaurant breached an express contractual duty contained in the franchise agreement between appellant and Tiffany, and that the trial court erred in concluding first that the contract did not prohibit the use of the word "Saturday's", second that the terms of the contract in any case did not bind the appellees, and third that appellant was not entitled to injunctive relief.
 
 
 16
 We agree with the trial court that the terms of paragraph 14B when read in the context of the integrated document are ambiguous. More particularly, the words "the names of the days of the week" as used in 14B are uncertain of meaning and susceptible of a dual interpretation. On the one hand, if the paragraph is read in isolation the phrase means the names of the seven days of the week. However, the placement of paragraph 14B and reference to the immediately preceding paragraph, 14A, indicates that the phrase refers only to the four days of the week specified in 14A. New York law, the applicability of which is stipulated in the licensing agreement, provides that a contract must be read in its entirety in order to ascertain the intent of the parties and any ambiguity must be construed against the party who drafted the contract, in this case Friday's. 67 Wall Street Co. v. Franklin National Bank, 1975, 37 N.Y.2d 245, 371 N.Y.S.2d 915, 333 N.E.2d 184; Mars Associates, Inc. v. Health and Mental Hygiene Facilities Improvement Corp., 1975, 47 A.D.2d 5, 364 N.Y.S.2d 67; Rottkamp v. Eger, 1973, 74 Misc.2d 858, 346 N.Y.S.2d 120.
 
 
 17
 Since we conclude that 14B is ambiguous and, when construed against the drafter, does not prohibit the use of the word "Saturday's" by anyone who is bound by the agreement, it is unnecessary to decide whether Pittman, Trainor, and International were involved with Tiffany, the actual licensee under the agreement, to such an extent that they also were subject to the terms of the contract.
 
 
 18
 III. Trademark infringement.
 
 
 19
 As an independent and alternative cause of action Friday's alleged that the use of the name "E.L. Saturday's" on a Baton Rouge restaurant markedly similar to the Friday's restaurant constitutes trademark infringement. The trial court held that the mark "T.G.I. Friday's" and the designations "E.L. Saturday's" or "Ever Lovin' Saturday's" were dissimilar visually and phonetically, and further that the physical similarities between the restaurants were irrelevant to the issue of infringement since the Friday's chain had no reputation in the Baton Rouge area.
 
 
 20
 The proper legal test of infringement is whether the use of the allegedly infringing mark is likely to confuse consumers as to the source of the product. Penn Fishing Tackle Mfg. Co. v. Pence, 5 Cir. 1974, 505 F.2d 657. Likelihood of confusion is a question of fact in this Circuit, and the trial court's findings will not be set aside unless clearly erroneous. Holiday Inns, Inc. v. Holiday Out in America, 5 Cir. 1973, 481 F.2d 445, 447; Rule 52(a) Fed.R.Civ.P. We believe that the trial court in considering visual and phonetic differences between the marks as well as the absence of Friday's restaurants in the Baton Rouge area took the proper factors into account in reaching the determination of no infringement. Penn Fishing Tackle Mfg. Co. v. Pence, supra. That finding is not clearly erroneous.
 
 
 21
 IV. Unfair competition.
 
 
 22
 Finally appellant contends that the trial court erred in rejecting appellant's claim of unfair competition.
 
 
 23
 The district judge correctly concluded that the unfair competition claim was to be evaluated under Louisiana law since Louisiana was the forum of the allegedly tortious conduct. The gravamen of unfair competition is passing off one's own goods or services as those of another amounting to fraud. Straus Frank Co. v. Brown, 1964, 246 La. 999, 169 So.2d 77. The court below found as a fact that Friday's was not known in the Baton Rouge area and that, while the decor of E.L. Saturday's was an obvious copy of the trade dress of Friday's, that "turn of the century" theme was not exclusive to Friday's and in fact is used in hundreds of different restaurants throughout the United States. Based on these findings which we see no reason to disturb the conclusion that consumers in Baton Rouge would not identify the restaurant there with the Friday's organization is inevitable. The law of unfair competition extends only to practices which induce confusion and deception of the public and does not apply when the possibility of deception and confusion is absent. Huth v. Rosenzweig, La.App.1946, 27 So.2d 742.
 
 
 24
 Likewise we agree with the trial court that the appellees did not appropriate any confidential information when they made use of "know how" gained during their experience with Friday's and therefore committed no fraud in that regard.
 
 V. CONCLUSION
 
 25
 In sum, we find that the record contains a sufficient evidentiary basis for the findings of fact of the district judge and that he properly applied the law to those facts. Accordingly his decision is
 
 
 26
 AFFIRMED.
 
 
 27
 HILL, Circuit Judge, specially concurring.
 
 
 28
 I concur in the result reached by Judge Sear, but I do so for a somewhat different reason than that stated in the opinion. The contract draftsman carefully divided § 14 of the contract into subsections 14A and 14B, specifically listing "Tuesday's," "Wednesday's," "Thursday's," and "Sunday's" in 14A and referring to "the days of the week" in 14B. I believe that the reference in 14B is sufficiently differentiated from that in 14A that it is not made ambiguous by proximity.
 
 
 29
 I concur in the result in this case, however, because the parties seeking enforcement of the contract drafted the contract and determined which parties to bind to the covenant not to compete. T.G.I. Friday's, Inc. was fully aware that the Jackson, Mississippi franchisee was a corporation wholly owned by Pittman and Trainor. Yet it bound only the corporation. Neither the individual owners of the franchisor corporation nor the individuals who owned the franchisee were made parties to the contract.
 
 
 30
 Although restraints on competition are often viewed with disfavor, they may serve a useful purpose. See Hazel Bishop, Inc. v. Perfemme, Inc., 314 F.2d 399 (2d Cir. 1963); De Long Corp. v. Lucas, 176 F.Supp. 104 (S.D.N.Y.1959), aff'd, 278 F.2d 804 (2d Cir.), cert. denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960); Williston on Contracts § 1641 (3d ed. 1972). Nevertheless, they traditionally are, and ought to be, strictly construed. Frederick Chusid & Co. v. Marshall Leeman & Co., 279 F.Supp. 913 (S.D.N.Y.1968); 21 C.J.S. Covenants § 20. If Friday's had felt it necessary to commit Pittman and Trainor to the covenants of the franchise agreement, it could easily have so provided.[1] I would leave the party who drew the contract with the restraint that it demanded against only the corporate franchisee and would not revise it for the franchisor to include Pittman and Trainor. Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970); Williston on Contracts § 621 (3d ed. 1972).
 
 
 31
 However viewed, the result is correct and I concur in it.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 Indeed, the franchisor might have exacted an undertaking by Tiffany's, Inc. to require all key employees to give a reasonable covenant against competition had this been seen as necessary