443 So.2d 712 (1983)
TUBULAR THREADING, INC.
v.
Sam Z. SCANDALIATO and Sam Z. Scandaliato and Associates, Inc.
No. 82-CA-165.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
*713 Earl S. Eichin, Jr. and M. Lizabeth Talbott, of Barham & Churchill, New Orleans, for defendant-appellant.
Michael H. Piper, III, New Orleans, for plaintiff-appellee.
Before CURRAULT, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
This litigation was instituted in the 24th Judicial District Court by Tubular Threading, Inc. under the Uniform Trade Secrets Act, LSA-R.S. 51:1431 thru 1439. Named defendant was Sam Z. Scandaliato and Associates, Inc., a consulting civil engineering firm.
Scandaliato had designed and built a 14-part pipe-handling system for Tubular Threading.
Following a three-day trial, the district judge (1) found that the pipe-handling system qualified for protection under the Uniform Trade Secrets Act and (2) permanently enjoined Scandaliato from using, selling, distributing or otherwise disseminating any shop drawing or other document relating to the pipe-handling.
On appeal, Scandaliato contends that the pipe-handling system should not be protected under the act and, further, that Scandaliato had not misappropriated any alleged trade secret.
For reasons following, we affirm the trial judge's determination that Tubular Threading's pipe-handling process can be placed within the confines of the Uniform Trade Secrets Act. The trial judge, however, did not find either a present need for the injunction or an actual or threatened misappropriation of the trade secret. Accordingly, we void and set aside the permanent injunction.

BACKGROUND
Tubular Threading was a relatively new company in early 1981 when it retained Scandaliato to design and build a system of handling and threading pipe for oilfield use. During the negotiations, Tubular Threading's spokesman was Glen Jordan while Scandaliato was represented by its president, Sam Z. Scandaliato, and vice president, Vasand Kale. Mr. Jordan was advised by Robert Albert, who was employed at the time by another company but who was to become president of Tubular Threading in May of 1981.
Jordan and Albert provided ideas and Scandaliato the engineering expertise, and the result was a 14-part system that handled pipe from the time it entered the plant until it was threaded and ready for release. Albert said the project was "... a combined effort of the two, input from us as to what we wanted and their engineering ..."
While none of the components was unusual, the sequence of the parts made the system unique, according to Jordan and Albert.
Jordan said:
"... I feel that all of the drawings, all of the information regarding our handling system was proprietary and confidential."
Kale testified that it was he who suggested the alignment method, the service bay, the hydraulic jack system and other components, and that Scandaliato as the consulting engineer owned the drawings.
Later, after Tubular Threading's shop was in full operation, Jordan and Albert suspected that Scandaliato had designed *714 and was building a similar system for another company, and this lawsuit was filed.

THE TRIAL
The trial judge heard conflicting testimony regarding the planning and design of Tubular Threading's pipe-handling layout and he heard testimony about Tubular Threading's efforts to safeguard its system. He decided that the pipe-handling sequence could be classified as a trade secret under the act and that it met the criteria enunciated in R.S. 15:1431, to wit:
(1) It was a method or process that had economic value,
(2) The method or process was not generally known and was not readily ascertainable by other persons, and
(3) Reasonable efforts had been maintained to preserve the system's secrecy.
The Uniform Trade Secrets Act is new, and there are no Louisiana court decisions applicable to the instant case. A "trade secret" as defined in the act can include "a formula, pattern, compilation program, device, method, technique or process," and we cannot say that the trial judge was wrong when he placed Tubular Threading's pipe handling system within the broad definition of a "method, technique or process."
Nor can we say that the trial judge was manifestly wrong when he factually found that the method or process had value and that it was not generally known, that the setup was not readily ascertainable and that reasonable steps had been taken to keep the method or process a secret. The record supports these findings, and we will not disturb them. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
True, some people had seen the system functioning, but mostly these were customers, potential customers or workers who had installed the various components.
Gary Grabenstatter also observed the system. He was employed by another company at the time and was in Tubular Threading's facility seeking employment. Grabenstatter, an engineer, said that the system couldn't be duplicated without the drawings.
The Tubular Threading plant is not open to the public and is situated on a five-acre tract surrounded on all sides by an eight-foot fence topped with barbed wire. Entrance is through a single driveway off the River Road. Vacant five-acre tracts are on either side of the plant; and to the rear, across several railroad tracts, is a non-functional part of Celotex.
With the exception of one integral member (the alignment conveyor), the pipe-handling arrangement is housed in a metal frame building.
In the "Comments" under R.S. 51:1431, it is noted that "... public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection." The efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures be taken to protect trade secrets. E.I. DuPont de Nemours & Co., Inc. v. Christopher, 431 F.2d 1012 (CA5, 1970), writ denied at 400 U.S. 1024, 91 S.Ct. 581, 27 L.Ed.2d 637 (1971).
Here, the trial court found Tubular Threading's efforts to maintain its trade secret reasonable, and we cannot disagree.
Appellant also contends that Tubular Threading "let the cat out of the bag" during the trial and that if the process was secret, it is no longer. Various witnesses described parts of the system, and photographs were put in evidence.
R.S. 51:1435 says that "... a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders ..., holding in camera hearings, sealing the records... and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."
Tubular Threading did not ask that any of these protective measures be invoked, and Scandaliato suggests, in its brief, "... that it is possible to read this record and *715 know how pipe flows through the Tubular facility ..." This, however, is appellant's assertion and not the testimony of a knowledgeable witness; and, considering the record, we are in no position to say that the entire sequence was explained in such detail that any prior secrecy is now moot.

INJUNCTIVE RELIEF
We will now examine the panoramic and far-reaching scope of the injunctive order, which reads:
"IT IS ORDERED that a permanent injunction issue herein, directed to Sam Z. Scandaliato & Associates, Inc., its agents, employees, all other persons, firms or corporations, acting or claiming to act in its behalf or with its authority, enjoining and restraining them from using, make use of, selling, distributing or otherwise disseminating any of the shop drawings, engineering drawings, design drawings, plans and specification, or other documents relating to the manufacture and construction of the Tubular Threading, Inc. material handling system, and also from using, continuing to use, disclosing and continuing to disclose, all trade secrets and proprietary and confidential information, including the concept and design relative to the sequence of components of the material handling system of the Tubular Threading, Inc. plant in Marrero, Louisiana."
Appellant argues that its skill, engineering knowledge and experience are being suppressed and that the court shouldn't hinder it from designing other pipe-handling systems using any or all of the 14 components in Tubular Threading's system.
In his "Reasons for Judgment," the trial judge said:
"The Court was not convinced that defendant had violated any ethical canons of the engineering profession. The Court was not convinced that defendant had duplicated drawings of plaintiff for other clients. The Court was also not convinced that defendant had violated trade secret laws at this time. However, the Court was convinced that a judicial determination of the issues involved herein was necessary to forestall future problems."
An injunction is a harsh, drastic and extraordinary remedy and will issue only if the party seeking same is threatened with irreparable loss or injury without adequate remedy at law, as pointed out by the Supreme Court of Louisiana in Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969).
The applicant must also show that the threat is immediate and that there is a clear and present need for it. An injunction cannot be based on mere speculation. See State Board of Education v. National Collegiate Athletic Ass'n, 273 So.2d 912 (La.App. 3rd Cir.1973), and Town of Kinder v. Beauregard Electric Co-op, Inc., 339 So.2d 891 (La.App. 3rd Cir.1976).
In cases involving trade secrets, R.S. 15:1432 directs the court to issue injunctions but only actual or threatened misappropriations may be enjoined.
In the instant matter, the trial judge said that he was not convinced that Scandaliato had violated any ethical canons of the engineering profession, duplicated Tubular Threading's drawings or violated any trade secret laws. The injunction was "... to forestall future problems."
The trial judge's language indicates that his order was not necessitated by a clear and present need. The trial judge found no actual or threatened misappropriation of a trade secret as required by R.S. 51:1432, and the record does not show that there was either an actual or threatened misappropriation. Accordingly, the injunction was inappropriate, no matter how well-intentioned the trial judge was.

CONCLUSION
The trial judge qualified Tubular Threading's 14-component pipe-handling system under the Uniform Trade Secrets Act and we will not reverse or modify this determination. However, as the trial judge did not find either a present or compelling need or an actual or threatened misappropriation, *716 the injunction was inappropriate. Consequently, we will nullify and set aside the injunctive order directed to Sam Z. Scandaliato and Associates, Inc. In all other respects, the judgment of the district court dated May 14, 1982 is affirmed.
Each party is to bear its own appeal costs.
AFFIRMED IN PART, REVERSED IN PART.