**NCH CORPORATION, Plaintiff-Appellee Cross-Appellant,**

v.

**Lynn N. BROYLES, et al., Defendant-Appellant Cross-Appellee.**

No. 83–3368.

United States Court of Appeals, Fifth Circuit.

Jan. 2, 1985.

---

Fox, Carpenter, O'Neill & Shannon, S.C., Bruce C. O'Neill, John H. Schaller, Milwaukee, Wis., for defendant-appellant cross-appellee.

Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, La., Larry R. Margolies, Dallas, Tex., for plaintiff-appellee cross-appellant.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

In this diversity action, Lynn N. Broyles appeals from a judgment that he had violated restrictive covenants in two employment contracts and breached fiduciary duties arising out of his employment relationship with the Mantek Division of NCH Corporation. Broyles challenges several factual determinations by the district court, argues that no duty existed not to use Mantek's confidential information, and that damages were improperly calculated.

NCH Corporation cross appeals, asserting that it was entitled to additional relief under the Louisiana Trade Secrets Act[1] and the Louisiana Unfair Trade Practices and Consumer Protection Law.[2] The district court judgment is affirmed in part and remanded for further proceedings not inconsistent with this opinion.

## I. *Facts*

NCH Corporation (NCH) is a Delaware corporation with its principal place of business in Texas. It is the successor by merger to the Mantek Corporation. The Mantek Division of NCH (Mantek) engages in the manufacturing, distribution, and sale of various chemical cleaning agents. It sells these products throughout the United States. Lynn N. Broyles is a Louisiana citizen who began working for Mantek as a sales representative in January of 1969. He was assigned to a territory not previously serviced by Mantek. Broyles executed a sales representative's agreement with Mantek in 1969 and a district sales manager's agreement in 1970. These agreements contained various restrictive covenants, including a covenant not to compete, a covenant not to solicit customers of Mantek in the event he left Mantek, and a covenant not to use or disclose Mantek's confidential information.

Mantek compiles and updates route books for the use of its sales representatives. The route books consist of detailed customer and sales information. The district court, 563 F.Supp. 142, found these route books were maintained with great conscientiousness, expense, and effort, and that Mantek regarded them as highly sensitive and valuable because they constituted a very basic part of Mantek's marketing strategy.

In 1981 and early 1982, Broyles became dissatisfied with Mantek. In February through June of 1982, Broyles' discontent became acute. He resigned on July 15, 1982, and on the same day executed a written employment contract with Share

---

1. La.Rev.Stat.Ann. 51:1431–39.

2. La.Rev.Stat.Ann. 51:1405.

Corporation (Share), a competitor of Mantek. His sales territory with Share included his former territory with Mantek. In a letter agreement between Share and Broyles, Share agreed to pay all costs of defending Broyles in any litigation brought against him by Mantek. Share further agreed to compensate Broyles for any length of time Broyles was restrained from working for Share, and to pay any judgment obtained by Mantek against Broyles.

In March of 1982, and while Broyles was still in the employment of Mantek, Broyles requested and received an updated version of his route book. The district court found Broyles made the request with malice aforethought. Broyles returned the route book in August of 1982, some weeks after he began selling Share's products to various customers including but not necessarily limited to those he serviced while employed by Mantek. The district court found that Broyles relied on confidential customer information contained in Mantek's route book in working for his new employer, at least to the extent that he did not rely solely on his memory.

The district court concluded that NCH was not entitled to enjoin Broyles from soliciting his former customers, but that NCH was entitled to monetary relief because Broyles deliberately and flagrantly disregarded the "trust reposed in him by [Mantek] and acknowledged by [Broyles] in the employment contracts he executed with [Mantek]." Record Vol. 3 at 608–09. The court also found NCH failed to properly mitigate its damages.[3] Taking this failure to mitigate into account, the court awarded NCH a judgment against Broyles in the amount of $73,426.64.

Broyles appeals this adverse judgment arguing that no duty existed not to disclose confidential information, that the information in the route books was not confidential, that he did not use the route books even if they were confidential, and that damages were improperly calculated. NCH argues that Broyles is essentially challenging findings of fact, and that the district court's findings were not clearly erroneous. Moreover, NCH argues it is entitled to additional relief under the Louisiana Trade Secrets Act and the Louisiana Unfair Trade Practices and Consumer Protection Law. The district court's ruling that Broyles breached a duty not to use confidential information for his own benefit is affirmed. We remand, however, for the district court to determine in the first instance whether either the Louisiana Trade Secrets Act or the Louisiana Unfair Trade Practices and Consumer Protection Law apply in this action.

## II. *Louisiana Law Governs This Action*

■ Broyles' employment contracts with Mantek provide that the contracts are to be governed by Texas law. Sitting in diversity, this Court is required to apply the Louisiana approach to conflicts of law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana allows parties to stipulate in their contracts which state's laws are to govern them. *White v. Crook*, 426 So.2d 334 (La.App. 2d Cir.1983).[4] *See Delhomme Industries, Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049 (5th Cir. 1982). Such contractual stipulations are not honored, however, where "there are legal or 'strong public policy considerations justifying the refusal to honor the contract as written.'" *ADR v. Graves*, 374 So.2d 699, 700–01 (La.App. 1st Cir.1979). *See Davis v. Humble Oil and Refining Co.*, 283 So.2d 783, 794 (La.App. 1st Cir.1973).

■ Strong public policy concerns exist in this case which require application of

---

**3.** In determining damages, the district court also took into account Broyles' contention that Mantek's decline in profits was due in part to declining economic conditions.

**4.** In diversity actions, this Court is bound by the decisions of the intermediate appellate courts absent a strong showing that the Louisiana Su-

preme Court would hold otherwise. *Estate of Mann*, 731 F.2d 267 (5th Cir.1984). *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 464–65, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). *See generally* 1A Moore's Federal Practice ¶ 0.307[2] (2d ed. 1976).

Louisiana law. The instant contracts involve a covenant not to compete, as well as covenants not to disclose confidential information or solicit Mantek's customers. In *ADR*, a Louisiana court found invalid a similar contract involving a covenant not to compete which stipulated that North Carolina law was to govern its terms. The court applied Louisiana law to invalidate the contract because a strong public policy exists in Louisiana which disfavors covenants not to compete.[5] Under the ruling in *ADR*, the covenant not to compete in the instant case is also invalid.[6] Furthermore, this Court has also found that Louisiana law disallows covenants not to solicit former customers. *Commonwealth Life Insurance Co. v. Neal*, 669 F.2d 300 (5th Cir.1982).

Because of the strong Louisiana policy disfavoring contracts of the type involved in the instant case, this Court finds Louisiana law controlling on the contract issues presented in this appeal.[7] Louisiana law also applies to the noncontract issues presented. *See T.G.I. Fridays, Inc. v. International Restaurant Group, Inc.*, 569 F.2d 895 (5th Cir.1978).

### III. *The District Court's Factual Findings are Not Clearly Erroneous*

The district court made several factual findings that Broyles challenges. The district court found that Mantek's route books were confidential information. In addition, the district court found Broyles used the confidential information contained in the route book to solicit Mantek's customers for the benefit of Broyles and Share. Further, the district court found that Broyles acted with "malice aforethought," that Broyles deliberately and flagrantly disregarded the trust reposed in him by NCH and Mantek, and that this deliberate and flagrant conduct damaged NCH.

Review of factual determinations by the district court is limited by the "clearly erroneous" standard of Fed.R.Civ.P. 52(a).[8] This limited review recognizes "the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence." *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982). "[U]nless an appellate court is left with the 'definite and firm conviction that a mistake has been committed,' it must accept the trial court's findings." *Id.* (citations and footnote omitted). *See Wild v. Lykes Bros. Steamship Corp.*, 734 F.2d 1124 (5th Cir. 1984).

Broyles argues that the information in the route books is not confidential because it is generally known or readily ascertainable. If the information was generally known or readily ascertainable, Broyles ar-

---

5. This policy is embodied in La.Rev.Stat.Ann. 23:921 which provides:

> No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged

over the same route or in the same territory for a period of two years.

6. The district court found that this clause of the contract was void. The parties do not challenge that ruling in this appeal.

7. This Court also finds, however, that the same result would be reached under Texas law. *See, e.g., Zoecon Industries v. American Stockman Tag Co.*, 713 F.2d 1174 (5th Cir.1983); *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272 (Tex.Civ. App.—Texarkana, 1980 no writ), *cert. denied*, 454 U.S. 965, 102 S.Ct. 507, 70 L.Ed.2d 381 (1981).

8. Fed.R.Civ.P. 52(a) provides:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

gues he would not be accountable for his use of that information. *See, e.g., T.G.I. Fridays, Inc.,* 569 F.2d at 899; *W.C. Lamb v. Quality Inspection Services, Inc.,* 398 So.2d 643 (La.App. 3d Cir.1981); *Gulf Toy House, Inc. v. Bertrand,* 306 So.2d 361 (La.App. 3d Cir.1975); *cf. Wheelabrator Corp. v. Fogle,* 317 F.Supp. 633 (W.D.La. 1970). He also argues that because the route books were compiled from information supplied to Mantek by Broyles, he is free to use that information upon leaving Mantek. *See Wexler v. Greenberg,* 399 Pa. 569, 160 A.2d 430 (1960).

■ Whether customer information is generally known or readily ascertainable is a question of fact. *Zoecon Industries v. American Stockman Tag Co.,* 713 F.2d 1174, 1179 (5th Cir.1983). In this case, the district court found that Mantek's route books contained confidential information. The route books enable Mantek salespersons to systematically solicit orders because it contains customers' names and addresses, identity of the person to be contacted at each customer's location, a detailed sales history revealing products purchased, quantities purchased, container sizes, prices paid, and frequency of purchases. While some of this information may be obtainable from other sources, as a whole, the evidence supports the court's conclusion that the information in the books goes beyond what is generally known or readily ascertainable. While Broyles supplied Mantek with much of the raw data used in the route book, other information was supplied by Mantek. In addition, it was Mantek who put the information into a useful form. Furthermore, each page of the book was marked confidential. Mantek limited access to the books to sales representatives, sales managers, and corporate officers. The district court's conclusion that the route books were confidential is not clearly erroneous.

■ Broyles also argues that the court's finding that he used the route book is clearly erroneous. The evidence demonstrated that Broyles ordered an updated book in March 1982 and did not return it to Mantek until some weeks after he left Mantek. Broyles testified at the preliminary injunction hearing that he intended to sell Share's products in his old territory at the time he accepted employment with Share. He also testified that he obtained an indemnity agreement from Share in the event Mantek instituted litigation. Broyles admitted that when he began selling Share's products to his old customers, he took into account those customers' purchases, although he asserted he knew this information from memory. He admitted, however, that he had Mantek's most current route book in his possession at this time. Record Vol. 4 at 41. He admitted he had already signed an employment contract with Share when he resigned from Mantek, even though he told Mantek he had not made any future plans. Moreover, Broyles admitted stating in his deposition that "If anyone was going to ravage, I didn't want it to be [Mantek]." Broyles wanted it to be him.[9]

From Broyles' own testimony, the court could have concluded that Broyles used the route book. The Court of Appeals cannot disavow the district court's findings simply because they are not supported by conclusive evidence. *Affholder, Inc. v. Southern Rock, Inc.,* 736 F.2d 1007, 1012 (5th Cir. 1984). This Court is not left with a definite and firm conviction that a mistake has been committed; thus, the district court's findings are not clearly erroneous.

■ Likewise, the district court's conclusion that Broyles acted with malice is amply supported by Broyles' own testimony. That Mantek was harmed by Broyles' actions is supported by the testimony of David Trace, NCH's director of accounting. These findings are not clearly erroneous.

9. Record Vol. 4 at 35–52. Broyles testified this final remark was made in a lighthearted fashion. Record Vol. 4 at 65. This Court must accord due deference to the opportunity of the trial court to hear witnesses and judge their credibility. *Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330 (5th Cir.1983).

IV. *The Duty Not to Use or Disclose Confidential Information*

[redacted] Broyles asserts he was under no duty not to disclose or use Mantek's confidential route books. NCH argues that Broyles was under an implied fiduciary duty not to use the route books, as well as an express contractual duty not to do so. This Court finds that the district court properly concluded that Broyles was under a duty not to use the route book.[10]

Broyles signed two employment contracts with Mantek. Each of these contracts contained a covenant not to compete with Mantek,[11] a covenant not to solicit Mantek customers upon termination of Broyles' employment relationship with Mantek,[12] and a covenant not to disclose or use Mantek's confidential information communicated to Broyles.

The district manager's contract provided:

> District Sales Manager *shall not at any time,* either during his employment or his continued employment or after the termination of such employment, *divulge to others or use for his own benefit any confidential information obtained during the course of his employment* by Company *relating to sales, sales publications, sales manuals,* formulae, processes, methods, machines, manufactures, compositions, ideas, improvements and inventions belonging to or relating to the affairs of Company, its subdivisions, affiliates, successors or associated companies.
>
> District Sales Manager further expressly covenants and agrees that during the term of his employment and at all times thereafter, he *shall not divulge to others or use to his own benefit any trade secrets belonging to the Company* and its subsidiaries, affiliates, successors or associated companies obtained during the course of his employment or that he became aware of in consequence of his employment.

See Exhibit P–5 at paragraph 6A and paragraph 6B (emphasis added).[13]

[redacted] Having upheld the district court's finding that the route book is confidential and that Broyles used it to make sales to former Mantek customers, it is also clear that Broyles breached this express contractual prohibition against such use. A covenant not to use confidential information is enforceable if, as here, the information used is in fact confidential. *See Wheelabrator Corp. v. Fogle,* 317 F.Supp. 633, 637 n. 1 (W.D.La.1970); *Standard Brands, Inc. v. Zumpe,* 264 F.Supp. 254, 262 (E.D. La.1967); *Great Lakes Carbon Corp. v. Continental Oil Co.,* 219 F.Supp. 468 (W.D.La.1963), *aff'd,* 345 F.2d 175 (5th Cir. 1965), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

[redacted] Moreover, Broyles was also under an implied duty not to use the route books:

10. In diversity cases which involve questions of local law, an appellate court gives great deference to the opinion of the district court:

> [A] federal trial judge who sits in a particular state and has practiced before its courts is better able to resolve difficult questions about the law of that state than other federal judges lacking such experience.

*Commonwealth Life Insurance Co. v. Neal,* 669 F.2d 300, 304 (5th Cir.1982).

11. The Louisiana courts have consistently held covenants not to compete to be unenforceable unless substantial training or advertising expenses are made by the employer. La.Rev.Stat. Ann. 23:921. *See, e.g., Orkin Exterminating Co. v. Foti,* 302 So.2d 593 (La.1974); *Gulf Toy House, Inc. v. Bertrand,* 306 So.2d 361 (La.App. 3d Cir.1975). The parties do not appeal the district court's finding that the instant covenant not to compete is invalid.

12. The covenant not to solicit Mantek's customers upon Broyles' termination of his employment relationship is also invalid. Although the Louisiana Supreme Court has not yet decided the issue, this Court in *Commonwealth Life Insurance Co. v. Neal,* 669 F.2d 300 (5th Cir.1982), found that covenants not to solicit former customers are also invalid under La.Rev.Stat.Ann. 23:921, because a provision barring solicitation of former customers accomplishes the same result as a provision barring competition. *See also Orkin Exterminating Co. v. Broussard,* 346 So.2d 1274 (La.App. 3d Cir.1977).

13. The sales representative's agreement contained essentially the same provisions.

Even in the absence of a contract not to disclose confidential information, an agent has a duty not to use or communicate information given to him in confidence in competition with or to the injury of the principal unless the information is a matter of general knowledge. The agent has a duty after the termination of the agency "not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets ... or other similar confidential matters...." The Restatement of the Law of Agency indicates that these rules apply "not only to those communications which are stated to be confidential, but also to information which the agent should know his principal would not care to have revealed to others or used in competition with him. It applies to unique business methods of the employer, trade secrets, lists of names and all other matters which are peculiarly known in the employer's business."

*Standard Brands,* 264 F.Supp. at 262. (footnotes omitted). *See also Nucor Corp. v. Tennessee Forging Steel Service, Inc.,* 476 F.2d 386, 392 (8th Cir.1973). Restatement (Second) of Agency, §§ 395, 396 (1958); *cf. Brown & Root, Inc. v. La Bauve,* 219 F.Supp. 179 (W.D.La.1962), *aff'd.,* 319 F.2d 582 (5th Cir.1963).

The instant case is distinguishable from those cases where a former employee is allowed to rely on his memory or general knowledge and skill gained in his former employment. *See, e.g., T.G.I. Fridays, Inc. v. International Restaurant Group,* 569 F.2d 895 (5th Cir.1978); *Servisco v. Morreale,* 312 F.Supp. 103 (E.D.La.1970); *Lamb v. Quality Inspection Services, Inc.,* 398 So.2d 643 (La.App. 3d Cir.1981); *Gulf Toy House, Inc. v. Bertrand,* 306 So.2d 361 (La.App. 3d Cir.1975). In the instant case, the district court found that Broyles actually used the confidential route book in soliciting customers and that he did not act solely from memory.

Broyles violated his contract with Mantek by using the route books for his personal benefit. His wrongful use was also a breach of trust. *Standard Brands,* 264 F.Supp. at 262. The district court properly concluded that Broyles breached his duty not to use this information.

## V. *Damages*

█ Both Broyles and NCH argue that the district court improperly calculated damages. "The district judge's assessment of the damages, being findings of fact, are, of course, shielded against reversal unless 'clearly erroneous.' " *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 783 (5th Cir.1983). Fed.R.Civ.P. 52(a).

█ In assessing damages in this case, the district court expressly took into account changed economic circumstances, as well as its finding that NCH failed to mitigate damages. Moreover, as a factual matter which is not clearly erroneous, the court concluded that Broyles received draws against unearned commissions rather than salary and that NCH was entitled to the overdraft.[14] This Court finds the district court considered the appropriate factors in making its damages award, and consequently, its determination is not clearly erroneous.

## VI. *The Louisiana Trade Secrets Act and the Louisiana Unfair Trade Practices and Consumer Protection Law*

█ NCH contends that it is entitled to further relief under the Louisiana Trade Secrets Act, La.Rev.Stat.Ann. 51:1431–39, and the Unfair Trade Practices and Consumer Protection Law, La.Rev.Stat.Ann. 51:1405, and that the district court did not make findings regarding the applicability of those statutes. Broyles argues that the district court implicitly denied relief under those statutes. Our search of the record indicates that no specific findings were made. Because NCH may be entitled to

14. Broyles argued that a $13,426.64 overdraft from his drawing account was salary. The district court concluded that it was a draw against unearned commissions.

additional relief including attorney's fees under these statutes, we remand for specific findings regarding the applicability of these statutes. *See generally Wright Chemical Corp. v. Johnson,* 563 F.Supp. 501 (M.D.La.1983); *Tubular Threading, Inc. v. Scandaliato,* 443 So.2d 712 (La.App. 5th Cir.1983); *Lamb v. Quality Inspection Services, Inc.,* 398 So.2d 643 (La.App. 3d Cir.1981); *National Oil Services, Inc. v. Brown,* 381 So.2d 1269 (La.App. 4th Cir. 1980).

### VII. *Conclusion*

The district court's factual findings are not clearly erroneous. The district court correctly found that Broyles was under both a fiduciary and contractual duty not to use confidential information of his former employer for his personal gain. We remand solely for a determination of the applicability of the Louisiana Trade Secrets Act and the Louisiana Unfair Trade Practices and Consumer Protection Law. The district court is

AFFIRMED IN PART, REMANDED IN PART.