Judgment rendered June 29, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,601-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

PRAESES, L.L.C.                                    Plaintiff-Appellant

versus

DANA S. BELL AND BLUE LINE                    Defendant-Appellees
INNOVATIONS, LLC

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 624,726

Honorable Craig O. Marcotte, Judge

* * * * *

DOWNER, JONES, MARINO & WILHITE          Counsel for Appellant
By: Allison A. Jones
     Michael A. Marino

COOK, YANCEY, KING & GALLOWAY             Counsel for Appellees
By: Elizabeth M. Carmody
     Luke D. Whetstone

* * * * *

Before MOORE, COX, and THOMPSON, JJ.

**MOORE, C.J.**

Praeses, LLC appeals a judgment that denied its request for a temporary restraining order ("TRO") and preliminary injunction to enjoin its former employee, Dana Bell, from breaching the separation agreement she signed when she left the company, from disclosing or using alleged trade secrets she got while working for the company, in violation of the La. Uniform Trade Secrets Act ("LUTSA"), La. R.S. 51:1431-39, and from executing a contract with a third party that would, in Praeses's view, breach the agreement and violate the law. We affirm.

## FACTUAL BACKGROUND

Praeses is a software and telecom company with much of its business devoted to analyzing phone systems for correctional facilities ("CFs"). According to Praeses, it has developed "proprietary internal auditing formulas, methods and processes," including cross-referencing enormous yet very specific data sets, and it currently provides these analytics to about 300 CFs. It claims that its "formulas, methods and processes" are unique, superior, and irreproducible: even though the contracts it has entered with various CFs become public records, nobody examining them would be able to understand them – unless they had learned the system from Praeses. It therefore considers its processes to be trade secrets.

Ms. Bell holds a BS in Finance from LSU-Shreveport, became a Series 7 licensed financial adviser while working for Morgan Stanley, a large investment bank, and managed her husband's family business, Bell Machine Co. In February 2009, Ms. Bell applied to Praeses and was hired as a national accounts manager; she signed an employment agreement

obligating her to keep the trade secrets confidential. She left in February 2013, but returned in July 2014, this time as recruiting coordinator, signing another employment agreement. She was later promoted to director of corporate affairs, which included the CFs operation. According to Praeses, in January 2018, Ms. Bell helped assemble a response to a request for proposals ("RFP") from the Alabama Department of Corrections, using all of Praeses's trade secrets.

Later that month, for reasons not disclosed in the record, Praeses terminated Ms. Bell. She was immediately cut off from the company's computer network and software, and ordered to return the company laptop. On March 2, 2018, Praeses presented her, and she signed, a separation agreement and general release ("Separation Agreement") that included a two-year noncompetition and nonsolicitation clause. It also had a confidentiality clause, in which Ms. Bell recognized that Praeses has "proprietary interest in * * * business methods and systems, * * * research and development activities, * * * systems manuals procedures, * * * and similar documents and products relative to the operation of the Employer's business[,]" and she agreed that she would "continue to maintain the confidentiality of such information." She further agreed that, in the event of a breach, Praeses was entitled to "immediate injunctive relief, without the necessity of establishing irreparable injury." In exchange, Praeses gave her a $31,250 severance payment, which, it stressed, was not required under Louisiana's at-will employment law.

Ms. Bell testified that after she left Praeses, she took a job with NCIC Inmate Communications, as an independent consultant, performing work similar to (but more expansive than) the analytics provided by Praeses. She

2

then worked as director of business development for Corizon Health, which coordinates healthcare for CFs and responds to RFPs.

Over two years later, in April 2020, the Commonwealth of Kentucky's Department of Corrections ("KYDOC") issued an RFP for inmate telecom consulting services. This was a contract previously held by Praeses, but Ms. Bell testified that she had never worked on the KYDOC contract while there. She quickly formed her own business, Blue Line Innovations, LLC ("BLI"), and assembled a response to the RFP. She testified that she did this using Microsoft Excel, Word, Adobe, and various "interfaces" from the KYDOC website. She submitted it and ultimately proposed a management fee of 3.92% of gross revenue, or a monthly flat fee of $19,295.

Praeses also submitted a response to KYDOC's RFP, using its unique "formulas, methods and processes." Ultimately, it proposed a management fee of 11% of net revenue, including inmate phone, video visitation, tablets, electronic funding, and recoupment payments.

KYDOC accepted BLI's proposal. Shocked to have lost this very lucrative account, Praeses filed an open records request with KYDOC. Going over the winning proposal, Praeses recognized that BLI was run by its former employee, Ms. Bell, and then decided that BLI's approach to the analytics was "too close" to Praeses's own formulas, methods, and processes, which it considered trade secrets.

## PROCEEDINGS IN THE DISTRICT COURT

Praeses filed this suit on July 9, 2020, against Ms. Bell and BLI, seeking a TRO and injunction to prevent them from "unauthorized appropriation" of its trade secrets. An affidavit from Praeses's president

3

asserted that while she worked there, Ms. Bell became intimately familiar with its trade secrets, used those in her response to KYDOC, and thereby misappropriated Praeses's confidential information. The petition alleged that her response to the KYDOC RFP was a breach of the Separation Agreement, a violation of LUTSA, and a violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1405. Praeses did not actually file its motion for TRO and preliminary injunction until nearly two weeks later, July 21, 2020.

The district court fixed the bond at $10,000 and granted the TRO on July 23. Ms. Bell moved to dissolve the TRO, showing that Praeses had also filed a protest with KYDOC and, as a result, the contract with BLI had been halted. Ms. Bell felt there was nothing to enjoin.

The matter proceeded to trial over three days in August 2020. Only two witnesses testified.

For Praeses, the witness was Ann Day, the director of the company's Correctional Services Division.[1] She stated that the methods they use are not things one can gather on an Excel spreadsheet or by simple math; the data is complicated; the system is a "unique parsing," which took years to develop. Praeses takes special steps to ensure its confidentiality, including two-step authentication to access the system, and only 30 of the 88 employees are even allowed to use it (but Ms. Bell was one of them). Over and over again, Ms. Day stressed how unique and abstruse their methods were, and how zealously they try to guard them. She admitted that other businesses compete with Praeses, but those competitors' proposals come

---

[1] Adam Rosen, the company's president, who filed the detailed affidavit in support of the TRO, was not called to testify.

4

nowhere near Praeses's product, for its breathtaking analytical depth. That was, of course, until they saw BLI's proposal: its "methodology and approach" were "really familiar." Ms. Day meticulously walked through various portions of the KYDOC proposals from both BLI and Praeses: even though BLI's were not nearly as complete, they were so similar that they could not have been done without "inside knowledge." To better illustrate her point, Ms. Day also discussed proposals from other competitors, such as Secured Perimeters International, Fidelis, and NCIC, to other CFs. Those proposals, reproduced in various exhibits, were, in her view, simplistic and superficial compared to Praeses's.

On cross-examination, Ms. Day was asked what compilations, exactly, were proprietary. She responded, "It's not just compiling," "not just straightforward mathematical formulas," and "nobody can find this out unless they work for Praeses." She admitted that some of the desired analysis can be inferred from KYDOC's RFP and website, but nobody had ever used Praeses's "very unique process." "There's no class for this stuff." She also admitted that after Ms. Bell left the premises in January 2018, she had no more access to Praeses's proprietary information, but she was adamant that Ms. Bell could not possibly have retained all this process just from memory. Ms. Day estimated that, based on KYDOC's projected annual revenue, Praeses's proposal would cost about $330,000 a year, and BLI's, about $231,000.

On redirect, Ms. Day reiterated her conviction that "business records are trade secrets." She also insisted that Ms. Bell had played an active part in preparing Praeses's proposal for the Alabama DOC, and this experience was probably what lodged the unique processes in Ms. Bell's mind.

5

After Ms. Day stepped down, and Praeses rested its case, BLI moved for involuntary dismissal. The court denied this, commenting that Praeses had "made a prima facie case."

For BLI, Ms. Bell described her background – BS in Finance from LSU-Shreveport, employment at Morgan Stanley, Series 7 certification, and employment at Bell Machinery and Corizon Health – implying that she had some natural ability with numbers and professional experience with figuring government contracts. She denied that she played any part in the Alabama DOC proposal while she worked at Praeses. BLI's KYDOC response, she maintained, was based entirely on data from the telecom provider and the specific requests in the RFP, processed with Excel, Word, and Adobe. She admitted that her figures were not as detailed as Praeses's – Praeses scored much higher on KYDOC's technical count – but they were good enough, with her lower bottom line, to win the contract. She described Praeses's vaunted "debit usage report" as not much different from balancing a checkbook. On cross-examination, she maintained that Praeses's work is not "so unique."

## ACTION OF THE TRIAL COURT

After taking the case under advisement, the court rendered an opinion citing the basic law of injunction, La. C.C.P. art. 3601, and jurisprudence that preliminary injunction is proper if the plaintiff makes a "prima facie showing" of the factors, *Fluid Disposal Specialties Inc. v. Unifirst Corp.*, 50,356 (La. App. 2 Cir. 1/13/16), 186 So. 3d 210.

The court then found, as a fact, that Praeses did not prove a "protectable trade secret," as Ms. Day, the only witness, "failed to articulate exactly what methods, processes, formulas or systems are purported by

6

Praeses to be proprietary or susceptible of being proprietary." Further, an employee is not required to ignore general information acquired by experience and committed to memory, *Theatre Time Clock Inc. v. Stewart*, 276 F. Supp. 593 (E.D. La. 1967), and Ms. Bell acquired general information and knowledge by experience. The court also noted that Ms. Day admitted that various items were *not* being claimed as trade secrets – formatting or generating the kind of reports that BLI submitted to KYDOC, the names of proposed reports, and the individual maintenance summary report.

Next, the court found that the Separation Agreement did not "create" a trade secret: a confidentiality agreement cannot transform information that is generally known into a trade secret, citing *Cason v. Chesapeake Oper. Inc.*, 47,084 (La. App. 2 Cir. 4/11/12), 92 So. 3d 436, 178 Oil & Gas Rep. 986, *writ denied*, 12-1290 (La. 9/28/12), 98 So. 3d 840. Finally, the court noted that if there was any loss, Praeses could recover damages later.

The court rendered judgment dissolving the TRO and denying the preliminary injunction. Praeses appealed suspensively.

### APPLICABLE LAW

A preliminary injunction is a procedural device interlocutory in nature and designed to preserve the existing status pending a trial of the issues on the merits of the case. La. C.C.P. art. 3601; *Levine v. First Nat'l Bank of Com.*, 06-0394 (La. 12/15/06), 948 So. 2d 1051; *Tanner v. Succession of Bourland*, 52,918 (La. App. 2 Cir. 11/20/19), 285 So. 3d 104. A preliminary injunction may be issued on merely a prima facie showing by the plaintiff that he is entitled to relief. *Rand v. City of New Orleans*, 17-0596 (La. 12/6/17), 235 So. 3d 1077; *Tanner v. Succession of Bourland*, *supra*. The

7

grant or denial of preliminary injunction will not be disturbed except for a clear abuse of the trial court's discretion. *Rand v. City of New Orleans*, *supra*; *Board of Sup'rs v. McCalmont*, 54,451 (La. App. 2 Cir. 5/25/22), __ So. 3d __.

The Louisiana Uniform Trade Secrets Act is intended to prevent one person or business from profiting from a trade secret developed by another, because it would thus be acquiring a free competitive advantage. *Bihm v. Deca Sys. Inc.*, 16-0356 (La. App. 1 Cir. 8/8/17), 226 So. 3d 466; *Omnitech Int'l Inc. v. Clorox Co.*, 11 F. 3d 1316 (5 Cir. 1994), *cert. denied*, 513 U.S. 815, 115 S. Ct. 71, 130 L. Ed. 2d 26 (1994). The operative definition appears in La. R.S. 51:1431 (4):

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Actual or threatened misappropriation may be enjoined. La. R.S. 51:1432 A; *Innovative Manpower Solutions LLC v. Ironman Staffing LLC*, 929 F. Supp. 2d 597 (W.D. La. 2013).

The threshold question in every trade secrecy case is whether a legally protectable trade secret exists in fact. *Fox v. Fox*, 49,619 (La. App. 2 Cir. 4/22/15), 164 So. 3d 359, *writ not cons.*, 15-1162 (La. 9/18/15), 177 So. 3d 1063; *Marine Pile Drivers LLC v. Welco Inc.*, 43,498 (La. App. 2 Cir. 8/13/08), 988 So. 2d 878. Information that is generally known or readily ascertainable is not considered to be confidential. *S. Indus. Contractors LLC v. W. Bldrs. of Amarillo Inc.*, 45,779 (La. App. 2 Cir. 12/15/10), 56 So. 3d

307; *Arco Oil & Gas Co. v. DeShazer*, 94-504 (La. App. 3 Cir. 11/2/94), 649 So. 2d 11/2/94), 649 So. 2d 444; *NCH Corp. v. Broyles*, 749 F. 2d 247 (5 Cir. 1985). A confidentiality agreement does not transform information that is generally known into a trade secret. *Arco Oil & Gas Co. v. DeShazer*, *supra*; Elizabeth A. Rowe, When Trade Secrets Become Shackles: Fairness and the Inevitable Disclosure Doctrine, 7 Tulane J. Tech. & Intell. Prop. 167 (Spring 2005), and citations therein; Rick J. Norman, La. Prac. Emp. Law § 14:16, Liability to Employer (Nov. 2021 Update), and citations therein.

Whether information or property is a trade secret and whether a party has improperly disclosed it are questions of fact subject to manifest error review. *Fox v. Fox*, *supra*; *Marine Pile Drivers LLC v. Welco Inc.*, *supra*; *NCH Corp. v. Broyles*, *supra*.

## DISCUSSION

Praeses has designated two assignments of error, but raises a prefatory argument: the standard for getting a preliminary injunction is that the plaintiff must make a "*prima facie* showing that it is entitled to the relief requested" (emphasis added). *Mary Moe LLC v. La. Bd. of Ethics*, 03-2220 (La. 4/14/04), 875 So. 2d 22. When the district court denied BLI's motion for involuntary dismissal, it commented that Praeses had made a "prima facie showing." From this, Praeses suggests that when it rested its case-in-chief, it made a showing sufficient to obtain the preliminary injunction, and the issue was settled.

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law,

9

the plaintiff has shown no right to relief. La. C.C.P. art. 1672 B. The standard for ruling on the motion is that the court "may then determine the facts" and either grant or deny the involuntary dismissal. *Id.* At times, courts refer to this standard by the shorthand term "prima facie showing," as in *Phillips v. State*, 43,143 (La. App. 2 Cir. 3/19/08), 978 So. 2d 1223. However, this means only that the court wishes to hear all the evidence before ruling, and does not necessarily create a conclusive finding to support an injunction under La. C.C.P. art. 3601 A. It is permissible for a court to deny a defendant's motion for involuntary dismissal, hear the defendant's evidence, and then deny the plaintiff's request for preliminary injunction. *Brookwood-Riverside LLC v. Baton Rouge Water Works Co.*, 20-1173 (La. App. 1 Cir. 5/25/21), 327 So. 3d 1. The district court's ruling on BLI's motion for involuntary dismissal did not resolve the issue of injunctive relief. Praeses's contention lacks merit.

### LUTSA Violation

By its second assignment of error, Praeses urges that the district court erred in determining that Praeses did not make a prima facie showing that it was entitled to a preliminary injunction to protect its trade secrets. It contends that its "methods, formulas and processes" met every essential element of a trade secret under R.S. 51:1431 (4): they have independent economic value, they are not generally known or readily ascertainable, they were subject to reasonable efforts to maintain their secrecy, and Ms. Bell was under an obligation not to use or disclose them. It suggests the case is analogous to *Technical Indus. Inc. v. Banks*, 419 F. Supp. 2d 903 (W.D. La. 2006), in which the court found that the plaintiff proved that its "Visonic" pipe inspection process "has not been successfully completed by any other

10

company" and was therefore subject to an injunction under LUTSA. Finally, it submits that it showed irreparable injury, even though R.S. 51:1432 A dispenses with this requirement. Any appropriation of a trade secret, it shows, must be enjoined. *Bihm v. Deca Sys. Inc.*, *supra*; *Newsouth Comms. Corp. v. Universal Tel. Co. LLC*, 2002 WL 3126558 (E.D. La. 2002).

In support, Praeses cites Ms. Day's testimony that its reconciliation services provide a unique way of identifying relevant information from call data, understanding the data and isolating the relevant information, efficiently validating the data to generate precise, verified reports, and summarizing the whole in an easily understood final report. Praeses shows over 300 CFs nationwide pay for its reports, proving their independent economic value. It contrasts the reports of its competitors, which are obviously less detailed and more generic than its own; in Ms. Day's view, this proved that Praeses's services are not generally known or readily ascertainable. Finally, it shows that it took reasonable measures to protect the confidentiality of its process, as is broadly stated in the Separation Agreement.

Of course, an alternative explanation was offered by BLI and Ms. Bell. They established that about 85% of Praeses's clients are public government entities, whose contracts and agreements are matters of public record, readily accessible and ascertainable, and cannot be considered confidential or proprietary. In fact, in response to this KYDOC RFP, Praeses included two reports,[2] together with descriptions of what these

_____

[2] These were the "Monthly Remittance Detail Report" and "Monthly Facility Summary Report."

11

reports contained, all of which was available by public records request. BLI also showed that Ms. Bell had considerable education and experience in responding to RFPs, analyzing data, reading contracts, and managing systems. She was perfectly candid in stating that she studied the KYDOC RFP, modeled her response on the existing KYDOC contract, and used data from KYDOC's telecom provider. She also explained that reports similar to Praeses's, though nowhere near as complex, could be generated using Excel, Word, and Adobe.

In light of the witnesses' conflicting testimony, we are disinclined to reverse the district court's findings. However, further confirmation is readily seen in the "KYDOC RFP Review and Comparison," admitted as Exhibit P-28. This shows that on "Executive Summary" (11 requirements, savings and efficiencies, examples of report, and description of processes), out of a maximum of 200 points, Praeses scored 140, compared to BLI's 90. On "Implementation Plan" (timeline, problems/complaints, and transition), out of a maximum 300, Praeses scored 230; BLI scored 210. On "Experience" (company background, other correctional agencies, and qualifications), out of a maximum of 100, Praeses scored 80; BLI scored 40. It was only on "Cost," out of a maximum of 400 points, that BLI outscored Praeses, 400 to 93. By this objective measure, and in the view of KYDOC itself, BLI's proposal was noticeably inferior to Praeses's in terms of technical sophistication and utility to the agency. In short, if Ms. Bell had really misappropriated Praeses's secret methods, processes, and systems, the results would have been much closer to the original. This distinguishes the case from *Technical Indus. Inc. v. Banks*, *supra*, in which the court found

that the technique being used by the defendant was the same as the distinctive Visonic technology developed by the plaintiff.

In light of this large body of evidence, much of it conflicting, we are unwilling to say that the district court erred in finding no protectable trade secret. The court commented on Ms. Day's rather mechanical intonation of the phrase "methods, processes and systems," coupled with an inability to articulate just what they were. The court also noted Ms. Bell's education, experience, and initiative; this court would add, she showed great practicality and complete candor in explaining how she produced her RFP response. In short, we find no manifest error or abuse of discretion. This assignment of error lacks merit.

### *Breach of Contract*

By its first assignment of error, Praeses urges the court erred in failing to grant a preliminary injunction to preclude Ms. Bell from breaching her contractual obligations. In support, it cites the plain meaning rule of La. C.C. art. 2046: "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." It contends that in both of its employment agreements and in the Separation Agreement, Ms. Bell accepted the company's definition of trade secrets and agreed to keep them confidential; and that, in the event of a breach, Praeses was entitled to injunctive relief without having to show irreparable injury. It lists the individual reports that it claims Ms. Bell misappropriated from its own unique system and Ms. Day's testimony

that each of these is a trade secret.[3]  Praeses urges this court to reject Ms. Bell's opinion to the contrary as self-serving.

The threshold question in every trade secrecy case is whether a legally protectable trade secret exists in fact.  *Fox v. Fox*, *supra*; *Marine Pile Drivers LLC v. Welco Inc.*, *supra.*  The district court's finding that information or property is, or is not, a trade secret and whether a party has, or has not, improperly disclosed it are questions of fact subject to manifest error review.  *Fox v. Fox*, *supra*; *Marine Pile Drivers LLC v. Welco Inc.*, *supra*; *NCH Corp. v. Broyles*, *supra.*  For the reasons already discussed, this court has found no manifest error in the district court's conclusion that Praeses failed to prove a protectable trade secret.  Without proof of this, there can be no injunctive relief.

Moreover, we agree with the jurisprudence and scholarly commentary that a confidentiality agreement cannot transform information that is generally known into a trade secret.  *Arco Oil & Gas Co. v. DeShazer*, *supra*; Elizabeth A. Rowe, *op. cit.* at 188-189; Rick J. Norman, *op. cit.* at "iv. Duty to Protect Trade Secrets."  This record supports the district court's finding that the contents of BLI's response, while perhaps beyond the ken of the average citizen, were not misappropriated from Praeses; they could be inferred from the structure of the RFP, data from KYDOC's telecom providers, data processing available in Excel, Word, and Adobe, and general accounting principles that Ms. Bell obviously had mastered.  We perceive no abuse of the district court's discretion.  This assignment of error lacks merit.

---

[3] These are the "Monthly Facility Report," "Free Call Analysis Report," "Station Summary Report," "Excessive Calls to a Single ANI Report," "Statistical Call History," and "Quarterly Call Analysis."

14

## CONCLUSION

For the reasons expressed, the judgment is affirmed.  All costs are to be paid by the appellant, Praeses, LLC.

**AFFIRMED**.