PEATROSS, J.
11 Marine Pile Drivers, LLC (“MPD”), filed suit seeking injunctive relief and damages against five defendants[1] for breach of contract and violation of the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, et seq. (“LUTSA”), and under the Louisiana Unfair Trade Practices Act, La. R.S. 51:1405, et seq. Finding that MPD did not have intellectual property that entitled it to protective relief, the trial court denied the request for preliminary injunction and this appeal ensued. For the reasons stated herein, we affirm.

FACTS

This dispute concerns the design, fabrication and sale of pile driving barges. *880 James Cannon, the principal manager of MPD, developed and designed a marine pile driving barge capable of driving multiple piles in a straight line without having to move the barge after each pile. The barge was designed with a slot in the center of the hull and a movable pile driving boom with a hydraulic hammer to drive the piles. The result was a more efficient and cost-effective method of driving marine piles. In 2004, Mr. Cannon went to Welco, a local metal shop, and spoke with its owner, Donald Robinson, about fabricating the barge.[2] The two men agreed that Welco would fabricate and sell the barges for MPD, which it did beginning in 2004 and continuing through 2007. During that time, Welco fabricated 39 barges for MPD; and by the time suit was filed, all but 2 of these barges had been sold commercially. Mr. Cannon testified that his barges had been 12listed for sale for two or three years on eBay, the internet sale and auction site.
Mr. Cannon further testified that, over these first several years, he made many revised drawings (some CAD drawings) of the design and consulted a patent attorney because his ultimate plan was to obtain a patent on the design. He further testified that Mr. Robinson was aware from the outset of the relationship that the design was to be confidential and that Mr. Cannon would be seeking a patent on the design. According to Mr. Cannon, the application preparation process had begun more than a year earlier, but the patent application was not actually filed until 2007.
Mr. Cannon also testified that, at some point in 2005, he learned that his assumed confidentiality of the barge design had been compromised when an employee of MPD, Gary Adkins, overheard Roger Watson, an employee of Welco, talking on the telephone about manufacturing and selling barges in Virginia. Apparently, one of the MPD barges had been purchased by Frank Lyons, owner of East Coast Marine Pile Drivers in Tappahannock, Virginia. Through that sale, Mr. Robinson established a business relationship with Mr. Lyons which eventually led to the possibility of Welco producing the MPD design barges for sale in Virginia by Mr. Lyons’ company rather than MPD. Mr. Cannon then traveled to Virginia and saw a barge for sale at East Coast Marine Pile Drivers that was the same configuration as his barge.
In the meantime, Welco was in production of a customer special order MPD barge, called the Hepler barge. MPD submitted a work order on the | ¡¡Hepler barge that contained an addendum of conditions and stipulations providing that the barge design is unique and is the intellectual property of MPD and was to be kept confidential by Welco. Mr. Robinson refused to sign the work order with the confidentiality language and it is disputed exactly what communication occurred thereafter between Mr. Cannon and Mr. Robinson. Significantly, however, Welco was allowed by MPD to continue to fabricate and sell an additional 21 barges over a period of almost two years’ time after Mr. Robinson’s refusal to sign the confidentiality agreement. Ultimately, this lawsuit ensued.
The trial court made several findings in the case sub judice, ultimately holding that MPD “did not follow the law available for establishing its barge design as its own intellectual property ... until well after it began manufacturing and selling its barges.” As such, the court found that MPD’s ideas became part of the public domain and could not, therefore, be consid *881 ered protected intellectual property. The request for preliminary injunction was denied. This appeal followed.

DISCUSSION

Whether or not something constitutes a trade secret is a question of fact. Corrosion Specialties and Supply, Inc. v. Dicharry, 93-196 (La.App. 5th Cir.2/9/94), 631 So.2d 1389, writ denied, 94-0597 (La.3/25/94), 635 So.2d 242. We review the factual findings of the trial court under the manifest error/clearly wrong standard of review. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,-555 (La.App. 2d Cir.8/21/96), 679 So.2d 477.
14A trade secret is defined by LUTSA as:
(4) “Trade secret” means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
La. R.S. 51:1431(4). The threshold inquiry is whether any legally protectable information exists. United Group of Nat. Paper Distributors, Inc. v. Vinson, 27,739 (La.App. 2d Cir.1/25/96), 666 So.2d 1338, writ denied, 96-0714 (La.9/27/96), 679 So.2d 1358. A trade secret is information that has independent economic value because it is not generally known or readily ascertainable and efforts are taken to maintain the secrecy of the information. Id., citing Wyatt v. PO2, Inc., 26,675 (La.App. 2d Cir.3/1/95), 651 So.2d 359, writ denied, 95-0822 (La.5/5/95), 654 So.2d 331. Where an item is unpatented and available on the open market, it would seem to be readily available to the public, including defendants, and capable of duplication and, thus, not a protectable trade secret. See Corrosion Specialties and Supply, Inc. v. Dicharry, supra.
Regarding how much action is required to protect a confidential “secret,” comment (f) to La. R.S. 51:1431 states:
(f) Reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on a “need to know basis”, and controlling plant access. On the other hand, public disclosure of information | .¡through display, trade journal publications, advertising, or other carelessness can preclude protection.
The efforts required to maintain secrecy are those “reasonable under the circumstances.” The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy. (Internal citations omitted.)
Our review of this record reveals no manifest error in the finding of the trial court that MPD failed to take reasonable efforts under the circumstances to maintain the secrecy of its barge design. We are cognizant, as was the trial court, that Mr. Cannon’s design was unique in its concept. The course of events over the following three years, however, led to the introduction of Mr. Cannon’s design to the open market to the extent that it was being sold on an internet auction site. The barge was marketed at trade shows and *882 pictured on websites and in pamphlets. Even after Mr. Cannon became aware that duplication of the idea may be a possibility, he allowed continued production and sale of 21 barges over two years by the alleged offender. In addition, we note that Mr. Cannon testified that over 22 drawings were made of the design and he contacted a patent attorney more than a year prior to filing suit. The patent application, however, was not filed until 2007, more than one year after the product was placed for sale on the open market. Under the circumstances of this particular case, we simply cannot find clear error in the finding that MPD failed to establish protectable intellectual property in the barge design at issue herein. The assignments of error set forth by MPD are without merit.

\r,CONCLUSION

For the foregoing reasons, the judgment of the trial court denying the writ of preliminary injunction is affirmed at the cost of Appellant, Marine Pile Drivers, LLC.
AFFIRMED.

. Named Defendants were Welco, Inc., Donald J. Robinson, Shoreline Piers & Seawalls, Inc., East Coast Marine Pile Drivers, LLC and Frank E. Lyons III.

. Welco is owned by husband and wife, Donald and Cynthia Robinson.